John W. Hanson, SBN: 214771
The Hanson Law Firm
16870 W. Bernardo Dr., Ste. 400
San Diego, CA 92127
Phone: (858) 451-0291
Fax: (858) 451-0281
EMail: john@thesandiegolemonlawyer.com

Michael E. Lindsey, SBN: 99044
Attorney at Law
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Phone: (858) 270-7000
EMail: mlindsey@netthere.com

Attorneys for Plaintiff Stephen D. Aho

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D. AHO, an individual, individually and on behalf of a class of similarly situated persons,<br><br>                    Plaintiff,<br><br>v.<br><br>AMERICREDIT FINANCIAL SERVICES., INC., d.b.a. ACF FINANCIAL SERVICES, INC., a business entity form unknown,<br><br>                    Defendants. | Case No. 10cv1373 DMS-BLM<br><br>NOTICE OF MOTION, PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL<br><br><br><br><br>DATE:   May 13, 2011<br>TIME:    1:30 pm<br>PLACE: 940 Front Street, San Diego<br>JUDGE: Hon. Dana M. Sabraw |

///

///

///

# TABLE OF CONTENTS

INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. AmeriCredit Uses Form NOIs That Suffer From the Same Flaws. . . . . . . . . 5

B. AmeriCredit Used Uniform Collection Procedures for Collecting on
Deficiency Balances. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. AmeriCredit Reported the Deficiency Claims to Credit Bureaus. . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. Legal Standard for Motion for Class Certification . . . . . . . . . . . . . . . . . . . . 8

B. This Case Meets the Requirements of Rule 23(a) . . . . . . . . . . . . . . . . . . 10

1. Ascertainability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Numerosity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3. Common Questions of Law and Fact. . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4. Typicality . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5. Adequacy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B. This Case Meets the Requirements of Fed.R.Civ.P. 23(b) . . . . . . . . . . . . 15

1. Class Certification is Appropriate Pursuant to Rule 23(b)(2) . . . . . . . . . . 15

2. Class Certification is Appropriate Pursuant to Rule 23(b)(3) . . . . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*
521 U.S. 591 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Bank of America v. Lallana*
19 Cal.4th 203 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

*Blackie v. Barrack*
524 F.2d 891 (9th Cir.1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Californians for Disability Rights, Inc. v. California Dept. of Transportation*
249 F.R.D. 334 (N.D.Cal.2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Castano v. Am. Tobacco Co.*
84 F.3d 734 (5th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

*Fireside Bank v. Superior Court*
40 Cal.4th 1069 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Gustafson v. Polk County, Wis.*
226 F.R.D. 601 (W.D. Wis. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hanon v. Dataproducts Corp.*
976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Hawkins v. Comparet-Cassani*
251 F.3d 1230 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Citric Acid Antitrust Litig.*
1996 WL 655791 (N.D.Cal.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*In re Tableware Antitrust Litigation*
241 F.R.D. 644 (N.D.Cal.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15, 16

*Juarez v. Arcadia Financial, Ltd.*
152 Cal.App.4th 889 (2007) . . . . . . . . . . . . . . . . . . . . . . . 2, 5, 6, 13, 15, 17

*Lerwill v. Inflight Motion Pictures, Inc.*
582 F.2d 507 (9th Cir.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1  *Lightbourn v. County of El Paso*

2  118 F.3d 421 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3  *Molski v. Gleich*

4  318 F.3d 937 (9th Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5  *O'Connor v. Boeing North American, Inc.*

6  184 F.R.D. 311 (C.D.Cal.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7  *Romero v. Producers Dairy Foods, Inc.*

8  235 F.R.D. 474 (E.D.Cal.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9  *Whiteway v. FedEx Kinko's Office and Print Services, Inc.*

10  2006 WL 2642528 (N.D.Cal.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

11  *Zinser v. Accufix Research Institute, Inc.*

12  253 F.3d 1180 (9th Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13

14                                           **Statutes**

15  Bus. & Prof. Code § 17200 et seq.

16  ("Unfair Competition Law" or "UCL") . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

17  California Civil Code § 1785.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18  California Civil Code §§2981 et. seq. ("Rees-Levering") . . . . . . . . . . . . .  passim

19  California Civil Code § 2983.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

20  Government Code § 26751 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

21  Government Code § 41612 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22  Vehicle Code § 28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

23  Federal Rules of Civil Procedure

24  Rule 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

25

26

27

28

To defendant and its counsel of record:

Please take notice that on May 13, 2011 at 1:30 pm or as soon thereafter as the matter can be heard in Courtroom 10, third floor of the U.S. District Court, Southern District of California, 940 Front Street, San Diego, California 92101, the Hon. Dana M. Sabraw presiding, plaintiff Stephen D. Aho will move for class certification pursuant to Rule 23 of the Federal March 17, 2011Rules of Civil Procedure.

Meet and Confer Certification: Pursuant to the Court's standing order, the parties met and conferred before Mr. Aho filed this motion.

This motion is based on this notice of motion and motion, the accompanying memorandum, and the declarations of Michael E. Lindsey, Stephen D. Aho, John W. Hanson,  and the exhibits attached thereto, the papers and pleadings on file and such other papers as may be submitted prior to or at the hearing on this motion or argument at the hearing.


Dated March 17, 2011

/s/ John W. Hanson
John W. Hanson
Attorney for Plaintiff

# I.

## INTRODUCTION

Plaintiff, Stephen D. Aho, moves for class certification pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and (b)(3) and for appointment of his counsel to represent the class pursuant to F.R.C.P. 23(g).

This case is ideal for class treatment.  It is based upon the form Notice of Intent to Dispose of Vehicle (NOI) that sub-prime lender AmeriCredit employed throughout the class period against thousands of California consumers after the repossession of the class members' family vehicles.  The NOI is the basis of AmeriCredit's claim to the extraordinary right to collect money from these consumers, even after AmeriCredit sold the vehicles at auction.  The NOI is defective.

This case presents a single, overriding legal issue common for all of the proposed class: whether AmeriCredit's notice set forth all of the conditions precedent to reinstatement of the purchase contract.  If it did not, then AmeriCredit did not (and does not) have the right to collect anything from the proposed class.  Cal.Civ.Code §2983.2(a); *see Wright v. AmeriCredit Financial Services*, Case No. 10cv0922 DMS(BLM)[Doc.No. 16], 2010 WL 5058345 (S.D.Cal., Dec. 6, 2010)(J. Sabraw), holding "[c]ompliance with the notice requirements is a prerequisite to the creditor's ability to collect any deficiency from the defaulting buyer." The Court in *Wright* was addressing a later, substantively revised Notice, compared to the one at issue here.  The changes in the *Wright* NOI were a direct response to this and other suits. AmeriCredit's new NOI now includes many of the fees and charges omitted in the subject NOI.

Whether the very different Notice at issue here was defective is a straightforward, legal issue that should be determined for all class members in one proceeding, rather than in thousands of individual suits or via AmeriCredit's continuing illegal, extra-judicial collection activity.

The Rees-Levering Automobile Sales Finance Act, Civil Code §§ 2981 *et seq.* sets out the requirements for the Notice of Intent to Dispose of Vehicle. If the NOI does not contain *all* the information that is required by § 2983.2 (a) (1)-(9), the finance company is barred from collecting any deficiency.  "The rule and requirement are simple. If the secured creditor wishes a deficiency judgment, he must obey the law. If he does not obey the law, he may not have his deficiency judgment." *Bank of America v. Lallana*, 19 Cal.4th 203, 215 (1998).  See also *Mora v. Harley-Davidson Credit Corp.*  2010 WL 4321602, 3 (E.D.Cal.) (E.D.Cal. 2010)

The NOI forms that AmeriCredit used during the Class Period (March 18, 2005 to May 15, 2009) did not comply with Civil Code § 2983.2(a)(2) because they failed to tell customers "all the conditions precedent" to reinstating their contracts. The statutory requirement that the NOI must list the conditions precedent to reinstatement means the NOI must "inform the consumer of any amounts the consumer will have to pay to reinstate a contract [and] inform the consumer if, when, and by how much those amounts may increase as a result of late fees and other charges." *Juarez v. Arcadia Financial, Ltd.*, 152 Cal.App.4th 889, 912 (2007) (*Juarez*).  The NOI at issue here tells the consumer only a partial dollar amount followed by "Plus any storage charges, additional payments, and late charges that come due after the date of this notice".  (Aho Decl. Exhibit 2 at 3).  See also (Lindsey decl.  Exhibit 4 (a) (I) regarding form templates used by AmeriCredit.)

AmeriCredit's NOIs during the Class Period did not tell the recipients the amounts and dates of the "plus" payments that came due between the date of the NOI and the expiration of the reinstatement period. Nor did they tell the consumers how much, or to whom, they would have to pay for storage charges, late charges, and government fees.  (Complaint at ¶12, Doc. No. 1.) Instead, AmeriCredit told the customers that the reinstatement amount might go up and

1  left it to the customer to figure out by other means how much they really had to

2  pay to reinstate, and who they had to pay it to.  (Lindsey decl.  Exhibit 4 (a) (iii),

3  Heinrich deposition 35:4 to 36:18.)

4      The NOI procedure serves two separate statutory purposes: permitting

5  reinstatement, and/or disallowing a deficiency judgment, if improper notice was

6  given.  *Salenga v. Mitsubishi Motors Credit of America, Inc.,* 183 Cal.App.4th 986,

7  1001-1002 (Cal.App. 2010).  If AmeriCredit did not fulfill the first purpose, it is not

8  entitled to a deficiency.

9      AmeriCredit violated all three prongs (unlawful, unfair and deceptive) of the

10  UCL by;

11      (i) failing to send the mandatory, code-compliant NOIs;

12      (ii) collecting and attempting to collect on invalid deficiency claims through

13      dunning letters, and

14      (iii) falsely reporting those deficiency claims to the credit bureaus.

15      Mr. Aho seeks declaratory and injunctive relief for himself and the class.

16  He asks the Court to declare that AmeriCredit's deficiency claims against class

17  members are invalid.  He asks the Court to

18      (i) enjoin AmeriCredit from collecting or attempting to collect deficiencies

19      against the class.

20      (ii) enjoin AmeriCredit from reporting those deficiency claims to credit

21      bureaus and

22      (iii) require AmeriCredit to notify the credit bureaus that the class members

23      are not liable for those deficiencies.

24      The declaratory and injunctive relief sought here will relieve California

25  consumers of the burden of more than $383 million of unpaid deficiency claims.

26  (Lindsey decl.  Exhibit 5, AmeriCredit Notice of Removal.)  It will also help to clear

27  the credit of thousands of Californians from the invalid claims of AmeriCredit, and

28  help many families regain the credit so badly needed in today's world.

1    Mr. Aho also seeks restitution for class members like himself who paid part

2    or all of AmeriCredit's invalid deficiency claims. This is a small subset of the class

3    because many members have not made any payments at all. Many class

4    members may have made small payments and have large unpaid deficiency

5    balances still on AmeriCredit's books. AmeriCredit has collected approximately

6    $4 million (Lindsey Decl. Exhibit 5, ¶ 5, declaration of Craig Paterson for

7    AmeriCredit) from class members on these deficiency claims, as compared with

8    the unpaid deficiencies totaling $383 million.

9    The proposed class consists of:

10    All persons who were sent an NOI by AmeriCredit to an address in
California at any time from March 18, 2005 through May 15, 2009, following

11    the repossession or voluntary surrender of a motor vehicle, who were
assessed a deficiency balance following the disposition of the vehicle, and

12    against whom AmeriCredit has asserted, collected, or attempted to collect
any portion of the deficiency balance. The class excludes persons whose

13    obligations have been discharged in bankruptcy, persons against whom
AmeriCredit has obtained final judgments in replevin actions, and persons

14    who received NOIs that denied them the right to reinstate.  (Complaint ¶
12.) [1]

15

16    Mr. Aho asks the Court to certify the class, to appoint him class

17    representative, and to appoint his counsel as class counsel.

18    This Court has already addressed the *new* form NOIs AmeriCredit began

19    using approximately May 15, 2009.  The new NOI was substantially revised in

20    response to the AmeriCredit NOI cases.  (Lindsey Decl.  Exhibit 4 (a) (iii)

21    deposition testimony re AmeriCredit's corrections to NOI.) Those NOIs are not

22    part of this case.  Mr. Aho's case, and the class members' case, arise solely from

23    the prior, defective forms.  AmeriCredit's changes to its form NOIs in May 2009 is,

24    in fact, the clearest possible admission that its prior form NOIs were defective and

25

26

27

28    [1]Plaintiff limits the class period alleged in the Complaint  to now end May 15,
2009, based on information and belief that AmeriCredit changed its form NOI in late-
May 2009 as the result of litigation.

illegal.[2]

This case presents the straightforward question of whether a uniformly defective notice, mailed to everyone, entitles AmeriCredit to continue collecting deficiency amounts from California consumers. Having this basic and fundamental issue decided in one place for all can only be done through class treatment and class certification.

## II.

## FACTS

### A.    AmeriCredit Uses Form NOIs That Suffer From the Same Flaws.

Dan Heinrich, manager of AmeriCredit's department that creates the NOIs, testified about the various NOI templates that AmeriCredit used during the class period. AmeriCredit used a standardized form of NOI for its non-bankruptcy customers from May 18, 2003 until May 15, 2009. (Lindsey Decl., Exh.  4 (a) (i), (ii), attaching Heinrich dep. 25:12 to 30:13; 33:4 to 35:3, and AmeriCredit's form NOIs.) Exhibits 32-34 are the templates for the NOIs in the class period.[3] Page 2 of each of those Exhibits shows that the "Amount Required to Reinstate" was calculated as of the date of the NOI, leaving the consumers to try to determine the amount of the "plus" payments.

Instead of listing the amounts that come due, the dates when they had to be paid, and who they were paid to, AmeriCredit's NOIs throughout the class period uniformly stated that in order to reinstate, the customer would have to pay

---

[2]It is also an admission that its ongoing collections on the deficiencies are invalid and illegal.

[3]Mr. Aho's NOI (Aho Decl., Exhibit 2,  NOI for Aho, dated August 15, 2005.) was prepared using the template marked as Exhibit 32 to Deposition of Heinrich. (See Lindsey Decl., Exh.  4 (a) (ii) (attaching the Aho form notice).) It bears identifying code 09072004 at the bottom right corner.  The remaining forms, all materially identical are attached to Mr. Lindsey's Declaration at 4 (a) (ii) Exhibits 33-34.

the partial amounts shown at the line "Amount Required to Reinstate" plus the following:

> Plus any storage charges, additional payments and late charges which become due after the date of this notice.

Customers were not informed of the amounts and due dates of installments that would come due between the NOI date and the end of the period for reinstatement.  The NOI must inform the buyer of any additional monthly payments that come due before the end of the notice period, as well as any late fees, or other fees, the amount(s) of these additional payments or fees, and when the additional sums will become due.  *Juarez v. Arcadia Financial, Ltd.*  152 Cal.App.4th 889, 905(Cal.App. 4 Dist.,2007).

Consequently, as evidenced by the forms themselves, no one could tell from the NOI what they had to pay in order to reinstate.

The NOIs also violate § 2983.2(a)(2) because they failed to inform the consumers that they must pay $15 to the local law enforcement agency where the repossession was reported as a pre-condition to getting their car back. Vehicle Code § 28 and Govt. Code §§ 26751, 41612. AmeriCredit's NOI forms did not mention the $15 fee.  (Lindsey Decl.  Exhibit 4 (a) (ii) Exhibits 33-34.) Nor did they tell consumers where to pay it.   AmeriCredit's failure to "provide the consumer with the names and addresses of those who are to be paid" for any of these charges, is likewise of violation of Civil Code § 2983.2.  The NOI must provide the names and addresses of third parties who are to be paid, but AmeriCredit failed to do so as to the police fees and the storage fees. *Juarez* at 904.

A customer who wanted to reinstate had to ask for more information than that provided in the NOI. (Lindsey Decl., ¶ 4 (a) (iii), attaching Heinrich dep. 35:4-36:18.)  When asked how a person was supposed to know what their storage charges would be, Mr.  Heinrich said "They can call the number at the

bottom of this letter." (*Id*. 36:6.)  That violates Civil Code § 2983.2(a)(2).  The Legislature intended that the NOI provide a level of specificity as to the conditions precedent to reinstatement sufficient to inform the buyer-without need for further inquiry-as to exactly what the buyer must do to cure the default. *Juarez*, at 904.

Because of these omissions the AmeriCredit NOIs fail in their essential purpose and fail to comply with California law.  No consumer could tell from the NOI what they had to pay in order to reinstate, nor could they determine who to pay it to.  Instead, the NOIs inherently and illegally impeded Mr. Aho's, and other consumers' ability to reinstate their contract in the very short time frame provided for reinstatement. *Juarez*, at 906.

Because AmeriCredit's form NOIs during the class period did not comply with the law, the deficiency claims that AmeriCredit asserts against the Class Members, and reports to Credit Reporting Agencies, are uniformly invalid and unlawful.

**B.     AmeriCredit Used Uniform Collection Procedures for Deficiency Balances.**

AmeriCredit has a standardized practice for collecting on these deficiency claims.  As explained in AmeriCredit's NOI, after it has sold the vehicle, it calculates the amount of the deficiency.  ( Lindsey Decl.  ¶ 3, a-f, and ¶ 4 (a) (ii) hereto, p.  2.)

> Upon disposition of the vehicle, you will be liable for any deficiency balance, including interest at the rate stated in your contract with us from the date of disposition of the motor vehicle to the date of entry of judgment.

The deficiency letter sent to Mr. Aho is typical and states in pertinent part:

> The above described vehicle was sold at a PRIVATE sale on 9/15/2005, as a result of your default on your Motor Vehicle Retail Installment Sales Contract.  Proceeds of the sale did not satisfy the balance on your account and a deficiency exists in the amount of

1    $9,212.48.

2   (Lindsey Decl. ¶ 5)

3        Each deficiency letter sent from the "Loss Recovery Department" of

4   AmeriCredit is clearly an attempt to collect a debt, stating "**TOTAL DEFECIENCY**

5   **OWED**" and stating "[C]ontact us to make arrangements for the payment of this

6   debt.  If you do not, AmeriCredit Financial Services may take any legal action

7   necessary in order to recover the debt."  (Id.)

8        AmeriCredit's deposition testimony confirms the uniform and formulaic

9   nature of its collections.  After AmeriCredit has sold the vehicle, it calculates the

10   amount of the deficiency and sends the customer a deficiency letter. (Lindsey

11   Decl. ¶4 (a) (v) (attaching Heinrich dep. 74:22-75:13 and Exhibit 17.) Then it

12

13                                  **REDACTED**

14

15

16

17

18

19

20

21

22

23

24

25        C.    **AmeriCredit Reported the Deficiency Claims to Credit Bureaus**

26        AmeriCredit uses reports to the Credit Reporting Agencies as additional

27   means to collect on the invalid deficiencies.  AmeriCredit has told all three

28   nationwide credit bureaus that Mr. Aho owes it more than $9,187.00 on the

deficiency. (Aho Decl.  Exhibits 4 and 5 (credit reports).)  Per Equifax, AmeriCredit renewed its report of the invalid deficiency it asserts as recently as May of 2010.  (Aho Decl., Exhibit 4 at p. 4).  As with form NOIs and form deficiency letters, AmeriCredit pursues a uniform collection policy of reporting deficiencies to Credit Reporting Agencies.  It is so uniform and routine that AmeriCredit's computer system reports these deficiency claims to the credit bureaus *automatically*, including the amount of each claim. (Lindsey Decl. at ¶ 4 (b) (vi) (attaching Paterson dep. 39:7-40:6).) Reporting deficiency claims to the credit bureaus helps AmeriCredit collect on those claims. (Lindsey Decl.  ¶ 4 (b) (vii) Paterson 40:20-41:8).)

## III.

## ARGUMENT

**A.**   **Legal Standard for Motion for Class Certification Rule 23 of the Federal Rules of Civil Procedure sets forth a two-step procedure for class certification.**

Rule 23 sets up a two step procedure for class certification.  First, the Court must determine that the following four requirements of Rule 23(a) have been satisfied: (1) numerosity; (2) common questions of law and fact: (3) typicality; and (4) fair and adequate representation. Fed.R.Civ.P. 23(a).

Courts also apply an additional threshold requirement into Rule 23(a) that does not neatly fall under any of the four listed prerequisites: to certify a class there must be some evidence that a class exists and that it is ascertainable. *In re Tableware Antitrust Litigation*, 241 F.R.D. 644, 650 (N.D.Cal.2007). A proper class definition is needed because it "identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." *Id.*, citing *Gustafson v. Polk County, Wis.*, 226 F.R.D. 601, 607 (W.D. Wis. 2005). A class definition is "definite enough" to satisfy Fed.R.Civ.P. 23(a)(1) if it "is administratively feasible for the court to ascertain whether an individual is a

member." *O'Connor v. Boeing North American, Inc.* 184 F.R.D. 311, 319 (C.D.Cal. 1998).

Once these requirements are met, the plaintiff must also show that the lawsuit qualifies for class action status under one of the criteria found in Rule 23(b). See *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1186 (9th Cir.2001), amended and superseded on denial of rehearing by *Zinser v. Accufix Research Institute, Inc.*, 273 F3d 1266 (9th Cir.2001). Rule 23(b) requires that the plaintiff establish that either: (1) there is a risk of inconsistent adjudication or adjudication of individual class member's claims would substantially impair non-party members' ability to protect their interests; (2) the defendant acted on grounds generally applicable to the class; or (3) common questions of law and fact predominate and class resolution is superior to other available methods. Fed.R.Civ.P. 23(b).

Although the plaintiff bears the burden of proving that certification is appropriate, *Hawkins v. Comparet-Cassani*, 251 F.3d 1230, 1238 (9th Cir.2001), the Court is "bound to take the substantive allegations of the complaint as true." *Blackie v. Barrack*, 524 F.2d 891, 901 n. 17 (9th Cir.1975). If the plaintiff offers a reasonable theory of the case supporting a classwide cause of action, that is sufficient. *See Id.* at 901; *In re Folding Carton Antitrust Litigation*, 88 F.R.D. 211, 215 (N.D. Ill. 1980); *In re Corrugated Container Antitrust Litigation*, 80 F.R.D. 244 (S.D. Tex. 1978).

Because the early resolution of the class certification question requires some degree of speculation, all that is required is that the Court form a reasonable judgment on each certification requirement. *In re Citric Acid Antitrust Litig.*, 1996 WL 655791 *2 (N.D.Cal.1996). In formulating this judgment, the Court may properly consider both the allegations of the class action complaint and the supplemental evidentiary submissions of the parties." *Id.* at *2. The Court may also consider the manageability of trying the plaintiffs' claims in the form of a

class action. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996).

**B.     This Case Meets the Requirements of Rule 23(a)**

    **1. Ascertainability**

Plaintiff proposes the following Class definition:

> All persons who were sent an NOI by AmeriCredit to an address in California at any time from March 18, 2005 through May 15, 2009, following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance. The class excludes persons whose obligations have been discharged in bankruptcy, persons against whom AmeriCredit has obtained final judgments in replevin actions, and persons who received NOIs that denied them the right to reinstate.  (Complaint ¶ 12.)

This class is ascertainable. In the declaration he filed in support of AmeriCredit's removal petition, Mr. Paterson explained that he asked AmeriCredit's Information Technology Department for reports on the company's deficiency balances and deficiency collections from the Class. (Lindsey Decl. at Exh.  5, (attaching Paterson Decl., ¶ 4).)  AmeriCredit's IT department reported to him precisely how much had been collected from the Class and how much remained unpaid. (*Id.*, Patterson Decl. at ¶ 5.)  The IT department was able to provide Mr.  Paterson with the borrowers to whom NOIs were sent in California, and the addresses.  In every case brought against AmeriCredit, they have been able to produce the NOIs and other key documents.

**REDACTED**

## 2. Numerosity

According to AmeriCredit, there are more than 93,035 putative class members.  (Lindsey Decl. at ¶ 3 (f), attaching AmeriCredit Financial Services, Inc., Responses to Special Interrogatories, dated July 7, 2009, in *Arguelles-Romero v.  AmeriCredit*, BC410509, Los Angeles Superior Court, at 4:15.) In support of its Notice of Removal[4] in *Bankston v.  AmeriCredit*, AmeriCredit filed a declaration admitting numerosity. (Lindsey Decl. at ¶ 3 (e) (attaching Paterson Decl., 2:1-3, stating "CAFA's first requirement - that putative class membership must be no less than 100 - is clearly satisfied.".) Also in support of the *Bankston* removal, AmeriCredit's Craig Paterson stated that AmeriCredit has collected $3,879,947.85 from the Class as of October 14, 2009. (*Id*., Decl. Paterson, ¶ 5).) AmeriCredit continues its collection efforts and automated negative credit reporting on the outstanding deficiencies which AmeriCredit alleges against the Class.

Finally, Mr. Paterson admitted in deposition that there are at least 1,000 people in the class.  (Lindsey Decl. at ¶ 4 (b) (v), (attaching Paterson Dep. 35:10-36:1).)The proposed class is sufficiently numerous to justify class treatment.

## 3. Common Questions of Law and Fact

Commonality focuses on the relationship of common facts and legal issues among class members. *Californians for Disability Rights, Inc. v. California Dept. of Transportation*, 249 F.R.D. 334, 344 (N.D.Cal.2008). "Rule 23(a)(2) has been construed permissively.  All questions of fact and law need not be common to satisfy the rule.  The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id*.  Here, there are common questions

---

[4]AmeriCredit claims it stopped collections on California consumers in May of 2009, but per its document production in this case, it was aggressively collecting against Mr. Aho in May and June of 2010.  (Lindsey Decl. at ¶ 5, Exhibit 11, attaching records of AmeriCredit contacts with Mr.  Aho.)

of law and fact.

The only factual questions relevant to the case are what the form NOIs said about the conditions precedent to reinstatement, and whether AmeriCredit attempts to collect on the deficiencies.  The facts are clear: AmeriCredit sent materially identical NOIs to Mr. Aho and the other class members over the Class period.  Each one had the same form language about reinstatement.  (Lindsey Decl. ¶ 4 (a) (ii) (attaching form NOIs).)  Other common questions of fact concern AmeriCredit's uniform practices of collecting on these deficiency claims and reporting them to credit bureaus. Plaintiff contends that each of those practices is unlawful, unfair and deceptive.  It is unlawful to collect on the claims because the deficiencies are invalid, and the class members are not liable for them. Civil Code §2983.2(a).  Because the class members are not liable for those deficiencies, it is unlawful, unfair and deceptive for AmeriCredit to report those claims to the credit bureaus.  Civil Code § 1785.25(a), *et al.*

The central common legal question is whether AmeriCredit's NOIs violate Rees-Levering because they failed to tell consumers "all the conditions precedent" to reinstatement.  California Civil Code § 2983.2(a)(2).  If AmeriCredit did not inform the consumer in the NOI of all the preconditions to reinstatement—such as monthly payments, storage charges, and late fees that came due after the date of the NOI and the information needed to pay the $15 fee to police department for a release—then AmeriCredit's NOIs violated the Rees-Levering Act.  AmeriCredit is not entitled to a deficiency if improper notice was given.  *Salenga v. Mitsubishi Motors Credit of America, Inc.*  183 Cal.App.4th 986, 1001-1002 (Cal.App. 2010).

Each of these form NOIs were defective in exactly the same way.  Moreover, Aho has alleged and submitted supporting evidence that AmeriCredit used from NOIs for the entire class period that were not materially different in any way.  Thus, AmeriCredit is liable in the same manner to the entire class and

liability issues are entirely common to the class.

A final common question of law includes the type of relief that should be ordered. The UCL authorizes the Court to enter declaratory and injunctive relief and to order restitution of money that has been taken from Class Members as a result of AmeriCredit's UCL violations. Fashioning and enforcing suitable declaratory and injunctive relief is a common question. In this case, even the calculation of restitution presents common questions.  While class members paid different amounts on different dates, computing the rate of interest or profit that AmeriCredit owes for its use of those funds is a common question.  See *Juarez*, *supra* at 912-917 (plaintiffs entitled to discovery of finance company's return on equity to use in computing the amount of profit or interest to be used in computing disgorgement to class members).  In addition, the statutory damages under the Rosenthal Act, plaintiff requests will be based on the same evidence of AmeriCredit's common practices and culpability.

### 4. Typicality

The typicality requirement focuses on the similarity between the lead plaintiff's legal theories and those of the people he purports to represent. *Lightbourn v. County of El Paso*, 118 F.3d 421,426 (5th Cir. 1998).  Typicality refers to the nature of the class representative's claim, and not to the specific facts from which it arose or the relief sought.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Mr. Aho is typical. He defaulted on his car contract and lost the car when it was repossessed and sold. Thereafter AmeriCredit asserted that he owed it the deficiency balance based on a form document, and tried to collect it from him and reported it to the credit bureaus.  AmeriCredit has done the same thing to thousands of California consumers.  Mr. Aho seeks the same forms of relief for himself as he seeks for the class: declaratory and injunctive relief, restitution of all payments on the deficiency, and statutory damages.  The legal theories and the

nature of his claim are exactly the same as those of the proposed class members he seeks to represent.

### 5. Adequacy

Rule 23(a)(4) requires that class representatives must "fairly and adequately protect the interests of the class."  Legal adequacy turns on two questions: (1) whether the class representative's interests are common with, and not antagonistic to, the class's interests; and (2) whether the class representative is "able to prosecute the action vigorously through qualified counsel."  *Whiteway v. FedEx Kinko's Office and Print Services, Inc.,* 2006 WL 2642528 at *7 (N.D.Cal. 2006), citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

Mr. Aho has no conflicts with the proposed class.  Members of the class have a mutual and coterminous interest in establishing that AmeriCredit's deficiency claims are invalid because its NOIs did not comply with California law and in obtaining declaratory and injunctive relief preventing AmeriCredit from collecting on those claims or reporting them to credit bureaus.

Because class representatives serve as guardian of the interests of the class, they should have some minimal familiarity with the litigation, although a detailed understanding of the theories and facts is not required. *In re Tableware Antitrust Litigation*, *supra* at 649.  Mr.  Aho understands the underlying theory of this case and his duties as Class representative.  (Aho Decl. at ¶ 9.)  Mr. Aho is represented by counsel with substantial experience and success in representing consumers in Rees-Levering class actions. Mr.  Lindsey was trial and appellate co-counsel for the consumers in the Rees-Levering cases: *Juarez*, *supra*, 152 Cal.App.4th 889, and *Salenga v. Mitsubishi Motors Credit of America, Inc*., 183 Cal.App.4th 986 (2010).  Both Mr. Lindsey and Mr. Hanson have substantial experience in consumer litigation, and consumer class litigation. (Lindsey Decl. at ¶ 7, 8, 9; Hanson Decl. at ¶ 4.)  They have successfully represented consumers

1    in a series of cases that have challenged the legal sufficiency of NOIs. (Id.) There

2    is no question that class counsel is qualified.

3        **B. This Case Meets the Requirements of Fed.R.Civ.P. 23(b)**

4        After satisfying the requirements of Rule 23(a), Mr. Aho must also show

5    that at least one of the three requirements of Rule 23(b) is satisfied before the

6    Court can certify the class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

7    614-15 (1997).  Mr. Aho contends that class certification is appropriate pursuant

8    to Rule 23(b)(2) and (b)(3).

9        **1. Class Certification is Appropriate Pursuant to Rule 23(b)(2)**

10       Rule 23(b)(2) allows a class to be certified when Rule 23(a) is met and "the

11    party opposing the class has acted or refused to act on grounds generally

12    applicable to the class," making it appropriate to grant relief to the class as a

13    whole.  This subsection primarily applies to suits for injunctive relief, but the Court

14    can certify a class seeking money damages if "the claim for monetary damages

15    [is] secondary to the primary claim for injunctive or declaratory relief." *Molski v.*

16    *Gleich*, 318 F.3d 937, 947 (9th Cir. 2003).

17       Mr. Aho seeks declaratory and injunctive relief that would;

18       (i) declare that the class members are not liable for the deficiencies,

19       (ii) enjoin AmeriCredit from further collection activity,

20       (iii) enjoin AmeriCredit from reporting the deficiencies to credit bureaus and
21       require it to notify those bureaus that the class members are not liable for
        those claims. (See Complaint, ¶¶ 1, 50, and Prayer.)

22       The injunctive and declaratory relief vastly exceeds the restitution sought in

23    this case by a factor of 100 to 1. In his removal declaration (Lindsey Decl. at ¶ 3

24    (e), (attaching Paterson Decl., ¶ 5)), Craig Paterson states that AmeriCredit's

25    unpaid deficiency claims are $383,676,237.22. In contrast, the amount collected

26    is tiny, "$3,879,947.85 (without counting interest or alleged "profits" thereon)" or

27    approximately 1% of the total. *Id*.

28       Because the restitutionary relief sought is minimal by comparison, class

1   certification pursuant to Rule 23(b)(2) is appropriate

2              **2. Class Certification is Appropriate Pursuant to Rule 23(b)(3)**

3          Class certification is also appropriate pursuant to Rule 23(b)(3). Under this

4   rule, the Court must find that the questions of law or fact common to the class

5   predominate over any questions affecting only individual class members, and that

6   a class action is superior to other available methods for the fair and efficient

7   adjudication of the controversy.

8          The matters pertinent to a finding under Rule 23(b)(3) include: (a) the

9   interest of members of the class in individually controlling the prosecution or

10  defense of separate actions; (b) the extent and nature of any litigation concerning

11  the controversy already commenced by or against members of the class; (c) the

12  desirability or undesirability of concentrating the litigation of the claims in the

13  particular forum; (d) the difficulties likely to be encountered in the management of

14  a class action.

15         The objective behind the two requirements of Rule 23(b)(3) is the

16  promotion of economy and efficiency. *In re Tableware*, *supra*, at 651, citing

17  Fed.R.Civ. P. advisory committee notes.  When common issues predominate,

18  class actions achieve these objectives by minimizing costs and avoiding the

19  confusion that would result from inconsistent outcomes. *Id*.  Because no precise

20  test can determine whether common issues predominate, the Court must

21  pragmatically assess the entire action and the issues involved.  *Romero v.*

22  *Producers Dairy Foods, Inc*. 235 F.R.D. 474, 489 (E.D.Cal. 2006).

23         Here, the predominate legal issue that will determine AmeriCredit's liability

24  is whether AmeriCredit failed to include statutorily-required information in the

25  NOIs that it sent to Mr. Aho and to the proposed class members. That will require

26  a determination of whether AmeriCredit complied with Civil Code § 2983.2(a)(2),

27  which requires AmeriCredit to include information in its NOIs listing all the

28  conditions precedent to reinstatement, i.e., all the payments its customers had to

make and other conditions they had to fulfill before they could reinstate. See *Juarez*, at 904-905. This issue is common to the proposed class and can be determined by evaluating the form NOIs and collection procedures.  Individual issues are minor. They include the amounts paid by those persons who made deficiency payments and the restitution to which they are entitled. These issues do not predominate over the common factual and legal issues.  In addition, no class members have shown a willingness to control this litigation, and counsel is unaware of any individual (non-class) litigation or arbitration regarding AmeriCredit and its NOIs. (Hanson Decl.  ¶ 5; Lindsey Decl.  ¶ 12)

Finally, there are no difficulties likely to be encountered in managing this class action. This type of class action has been routinely certified. *See, e.g.*, *Fireside Bank v. Superior Court*, 40 Cal.4th 1069 (2007)(class certified involving UCL/Rees-Levering Act and notice requirements); *Juarez v. Arcadia Financial, Ltd.*, 152 Cal.App.4th 889 (2007)(same); *Lewis v. Robinson Ford Sales Inc.*, 156 Cal.App.4th 359 (2007)(reversing denial of class certification in UCL/Rees-Levering Act case, and directing trial court to certify the class)(Mr. Hanson was one of the attorneys for plaintiff/appellant in *Lewis*); *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541 (N.D. Cal. 2005)(certifying Rosenthal Act claim). AmeriCredit has the records of the class members and knows how much they paid to AmeriCredit and how much AmeriCredit claims that they owe in deficiency balances.

///

///

///

1

**CONCLUSION**

2          For the foregoing reasons, Plaintiff Stephen D. Aho respectfully requests

3    this Court certify the class defined above, appoint him as class representative,

4    and appoint his counsel as class counsel.

5

6    March 17, 2011

7                                              /s/John W.  Hanson
                                              John W.  Hanson
                                              Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
(Sections 1013a, 2015.5 C.C.P.)

STATE OF CALIFORNIA )
                     ) ss.
COUNTY OF SAN DIEGO )

I am employed in the County of San Diego, State of California. I am over the age of 18 and not a party to the within action. My business address is: 16870 West Bernardo Drive, San Diego, CA, 92127.

On the date shown below, I served the foregoing document described as:

NOTICE OF MOTION, MOTION FOR CLASS CERTIFICATION
Aho v. AmeriCredit , Case No. 10cv1373 DMS BLM

to the interested parties in this action by mail at San Diego, California addressed as follows:

Peter S. Hecker
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA, 94111-4109

[X]     (**BY EFILE**) The above document was served on the interested party named above by electronic means via Efile.

[ ]     (**BY PERSONAL SERVICE**) I caused to be delivered such envelope by hand to the addressee.

[X]     (**FEDERAL**) I declare that I am a member of the bar of this court.

Executed on March 17, 2011, at San Diego, California.


                                                    /s/John W.  Hanson
                                                    John W.  Hanson