John W.  Hanson, SBN: 214771
The Hanson Law Firm
16870 W. Bernardo Dr., Ste. 400
San Diego, CA 92127
Phone: (858) 451-0291
Fax: (858) 451-0281
EMail: john@thesandiegolemonlawyer.com

Michael E. Lindsey, SBN: 99044
Attorney at Law
4455 Morena Blvd., Ste. 207
San Diego, CA 92117-4325
Phone: (858) 270-7000
EMail: mlindsey@netthere.com

Attorneys for Plaintiff Steven D. Aho

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN D. AHO, an individual, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>AMERICREDIT FINANCIAL SERVICES, INC.,  d.b.a. ACF FINANCIAL SERVICES, INC., a business entity form unknown,<br><br>Defendants. | Case No. 10cv1373 DMS-BLM<br><br>PLAINTIFF'S OPPOSITIONTO MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>DATE:   May 13, 2011<br>TIME:    1:30 p.m.<br>PLACE: 940 Front Street, San Diego<br>JUDGE: Hon. Dana M. Sabraw |

1

# TABLE OF CONTENTS

2

3

4    I.      INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    II.     FACTUAL SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

6    III.    ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7    A.      Legal Standard for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . 6

8    B.      Mr. Aho is a Legitimate Customer of AmeriCredit Meeting Every
             Purpose of Proposition 64's Amendments to the UCL. . . . . . . . . . . . . . 7
9
     C.      The UCL, Standing, & Causation Regarding Money Paid and the Loss
10           of Mr. Aho's Vehicle. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11   D.      UCL Standing: Economic Injury and AmeriCredit's Derogatory Credit
             Reporting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
12
     E.      Mr. Aho's Claims Are Not Time-Barred. . . . . . . . . . . . . . . . . . . . . . . . . 18
13
     F.      Mr. Aho's Claims Are Not Preempted. . . . . . . . . . . . . . . . . . . . . . 21
14
     IV.     CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

3

*Cases*

American Pipe & Constr. Co. v. Utah,
414 U.S. 538 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Brady v. Credit Recovery Co.,
160 F.2d 64 (1st Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Benson v. Kwikset Corp.,
51 Cal.4th 310, 323 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

*Bank of America v. Lallana*
19 Cal.4th 203 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 12

Celotex Corp. v. Catrett,
477 U.S. 317  (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Eisenberg v. Ins. Co. of N. Am.,
815 F.2d 1285 (9th Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Chamberlan v. Ford Motor Co.,
369 F. Supp. 2d 1138 (N.D. Cal. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 6

Crown, Cork & Seal Co. v. Parker,
462 U.S. 345 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

Cisneros v. U.D. Registry, Inc.
39 Cal. App. 4th 548. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Clemens v. DaimlerChrysler Corp.,
534 F.3d 1017 (9th Cir. 2008)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Catholic Social Services,
232 F.3d 1139 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hatfield v. Halifax PLC,
564 F.3d 1177, 1189 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fireside Bank v. Superior Court
40 Cal.4th 1069 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Gorman v. Wolpoff & Abramson, LLC,
552 F.3d 1008, 1032 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

In re Tobacco II,
46 Cal.4th 298 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Marks v. Green Tree Servicing,
2010 U.S. Dist. LEXIS 119979, (N.D. Cal. Oct. 27, 2010). . . . . . . . . . . . . . . 17

Rivera v. Bank One,
145 F.R.D. 64 (D.P.R. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Rubio v. Capital One Bank,
613 F.3d 1195 (9th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16.17

Juarez v. Arcadia Financial, Ltd.
152 Cal.App.4th 889 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Velasquez v. Chase Home Fin. LLC,
2010 U.S. Dist. LEXIS 82065, at *22(N.D. Cal. Aug. 11, 2010) . . . . . . . . . . . . . 17

Wallace v. King,
2000 Tex.App. Lexis 5879 (Tex.Civ.App. 2010). . . . . . . . . . . . . . . . . . . . . . 20

White v. TransUnion, LLC,
462 F.Supp.2d 1079 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

**Statutes**

Cal Bus. & Prof. Code § 17200 et seq.
("Unfair Competition Law" or "UCL") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
Cal Civil Code § 1785.25(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
Cal Civil Code §§2981 et. seq. ("Rees-Levering") . . . . . . . . . . . . . . . . . . . . . . passim
Cal Civil Code § 2983.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim
28 U.S.C. § 2201(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Defendant's claims of "manufactured" standing by plaintiff, Mr. Aho, are themselves manufactured.  Attacking Mr. Aho's motives at every turn, defendant simply ignores Mr. Aho's actual and lengthy testimony.   Mr. Aho testified in detail about the devastating effects of AmeriCredit Financial's failure to provide him a fair opportunity to reinstate his contract, and its persistent pursuit of its illegal claim to over $9,000. Not only was Mr. Aho deprived of his only means of transportation to work by AmeriCredit, AmeriCredit then effectively stopped him from regaining his long-held security clearance that he needed *for* work.  Even after AmeriCredit knew its illegal debt was preventing Mr. Aho from regaining his military contractor employment (which was the  only means by which he could ever repay), the undisputed record shows it refused to even provide him a simple letter and payment plan.  Although he did what AmeriCredit, the Department of Defense, and a debt consultant told him to do and started paying what he could on the debt, AmeriCredit now claims "undisputed" evidence that the payment and all this history was a sham.  Nonsense.

Furthermore, defendant's misnamed "Motion for Summary Judgment," which is actually only a *Partial* Motion for Summary Judgment as it leaves the Third Cause of Action for Declaratory Relief entirely unaddressed, ignores both binding authority and undisputed dispositive facts. The California Supreme Court, Ninth Circuit Court of Appeals, and federal district courts have now uniformly held that Proposition 64's standing amendments to the UCL require a broadly-defined economic injury by a legitimate customer of a business.  They have also held that illegally reporting debt on a consumers credit bureau reports is exactly the kind of economic injury sufficient to support standing.   The undisputable facts show that Mr. Aho is a legitimate customer of AmeriCredit, embroiled in an ongoing dispute over AmeriCredits' unlawful assertion of an over $9,000 debt.  AmeriCredit has locked Mr. Aho in a modern day debtor's prison on an invalid debt.  Under the

clear directives of the California Supreme Court, to say Mr. Aho does not have "standing" to fight AmeriCredit would serve no legitimate purpose as Mr. Aho was never the target of Prop. 64.  Defendant's legal arguments to the contrary rely entirely on AmeriCredit's wishful pre-*Kwikset* arguments about how Prop. 64 was going to be read, and are now clearly invalid.

AmeriCredit's attack reveals nothing of the uncontradicted facts regarding Mr. Aho's many attempts to get a plan in place to address the deficiency debt on his credit report so that he could renew the required security clearance for his profession as an Installation Tech for defense contractors and the Navy. AmeriCredit simply ignores its own telephone logs wherein all Mr. Aho's reasons are recorded, and, instead, AmeriCredit wildly twists the plain facts that emerged in the more than 7-hour deposition of Mr. Aho wherein every detail of his years of struggle in AmeriCredit's debtor prison were explored.

Instead of addressing Mr. Aho's continuing economic injury and long history of business dealings, AmeriCredit invites the Court into a myriad of disputed facts and innuendo, entirely inappropriate to Summary Judgment.

## II.  FACTUAL SUMMARY

After an over seven hour deposition of Mr. Aho about every detail of his difficult life, and there is still no dispute that Mr. Aho was an AmeriCredit customer, that AmeriCredit provided financing for his purchase of a vehicle, that AmeriCredit repossessed this same vehicle, that AmeriCredit sent him the NOI Mr. Aho claims failed to give them the right to a deficiency, or that AmeriCredit still asserts the deficiency to be a valid debt.  (Deposition of Stephen Aho ("Aho Dep.") Aho Dep. Tr. 31:25-32:2; 38:20-23, Exh. 9;  72:9-21, Ex. 18; Aho Dep. Exhs. 28-30, 166:18-176:25.) It is undenied, furthermore, that AmeriCredit reports the deficiency on Mr. Aho's credit bureau reports, and that AmeriCredit updated the amount on Trans Union in June 2010, showing $9,252, where it remains parked to this day. (Aho Dep. Exhs. 28-30, 166:18-176:25.)  These undisputed

facts alone are sufficient to show both Article III standing and UCL "economic injury."

Defendant's summary of the facts fails in its attempt to prove beyond dispute (or at all for that matter) that Mr. Aho never intended to resolve the AmeriCredit deficiency.  Mr. Aho has provided ample evidence of the true facts.

For many years, Mr. Aho was a well-paid Installation Tech with a long-held security clearance, working in the defense industry installing rocket and fire-control systems for the Navy. (Aho Dep. 13:18-14:16; 43:15-23.) When he was laid off, Mr. Aho had his Dodge Dakota truck repossessed in 2005. (Aho Dep. 50:1-22, 65:12-66:24.)  Mr. Aho wanted to reinstate his contract after the repossession, but did not have the money himself.  He believed he may have been able to raise the money somehow, but gave up because past attempts to learn what was due via the phone and pay whatever amount he would be told had not worked with AmeriCredit.  (Aho Dep. 66:1-71:13; 75:9-77:1; Exh. 18 (NOI (providing limited time for reinstatement). The AmeriCredit Notice that was supposed to tell him in writing all that he owed, fails to do so. (Id.)  The truck was sold at auction shortly after repossession. (Compare Aho Dep. Exhs. 18-19.)

Mr. Aho then found himself unemployed and without the transportation that he needed to work at his profession. (Aho Dep. 54:6-18.) In 2006, Mr. Aho began the process of re-establishing his security clearance, which had been revoked or lapsed around the time of the lay off.  (Aho Dep. Aho Depo. 44:24 - 51:16; Exh. 2 to Aho Decl., 3 (e-QIP Security Clearance Appl.)) At that time, Mr. Aho referenced his concern about AmeriCredit and that he was addressing the AmeriCredit issue. (Id.)  He was well aware of the Department of Defense Directive on Security Clearance Review Program, which states:

Guideline F: Financial Considerations.

E2.A6.1.1. The Concern: An individual who is financial overextended is at risk of having to engage in illegal acts to generate funds…

1        E2.A6.1.2. Conditions that could raise a security concern and may

2        be disqualifying include:

3        E2.A6.1.2.1. A history of not meeting financial obligations;….

4        E2.A6.1.2.3. Inability or unwillingness to satisfy debts; …

5   (Exh. 3 to Aho Decl., ¶5; see also Decl. of Jason Gonzalez, ¶¶ 5-6 (former

6   employer regarding the effect of debt on Mr. Aho's ability to work for them).)

7        Over the ensuing years, he was forced on to unemployment at times and

8   and to work for several years at a much lower-paying job (in comparison to his

9   defense contracting) at a Home Depot because it was near his residence. (Aho

10  Dep. 55:6-11; 137:2-11.) He had to be able to walk to work.  (Id.) He lost that job

11  in 2009 when he had to move farther than he could walk or bike (he never had a

12  car after the repossession).  (Aho Dep. at 20:1-9; 136:16-137:8.) Around May of

13  2010, after several months of unemployment and living in poverty (Aho Dep.

14  136:16-24; 183:10-184:6), Mr. Aho was informed by a mutual acquaintance that

15  Mr. Aho's long-time contact, Jason Gonzales, was promoted to head of the

16  Personnel Dept. at Serco, Mr. Aho's former employer. (Aho Dep. 90:19-96:6).  On

17  May 5, 2010, Mr. Aho applied to Serco. (Aho Dep. 131:14-132:8; (Gonzales Decl.

18  at ¶5).)

19       Mr. Aho had come up with a plan that would enable him to earn

20  substantially more money, and pay off his debts.  (Id.) Mr. Aho requested and

21  received a conditional offer to work at Serco which entailed immediately working

22  out-of-town and on the road.  (Id.) This meant he would be able to live in a motel

23  and have a rental car on a per diem paid by Serco, which would then enable

24  him to both earn enough with the higher pay, and save enough, not having to

25  cover rent and transportation expenses, to pay off his outstanding debts on his

26  credit reports that the Defense Department required be addressed before a

27  security clearance could be approved. (Id.) Illustrative is the Department of

28  Defense Directive, (Aho Decl. Exh. 3), which states:

1   E2.A6.1.3. Conditions that could mitigate security concerns include:

2   E2.A6.1.3.3. The conditions that resulted in the behavior were largely

3   beyond the person's control …

4   E2.A6.1.3.6. The individual initiated a good-faith effort to repay overdue

5   creditors or otherwise resolve debts.

6   In order to realize this plan, Mr. Aho needed those companies with which

7   he had outstanding debts to provide him with some form of letter stating that the

8   company had come to an agreement with Mr. Aho regarding a satisfactory

9   payment schedule for satisfying the debt. (Aho Dep. 97:14-98:16; 123:1-24.) The

10  plan began to work as Mr. Aho reached agreements with two of the three

11  creditors, and Mr. Aho began making the agreed payments with them, but it fell

12  apart because AmeriCredit refused to provide Mr. Aho a reasonable plan

13  confirmed in writing.  (Aho Dep. 121:1-10; 144:16-147:19; Exh. 2 Lindsey Decl.

14  (attaching AmeriCredit phone logs AC Aho 000057-59 (entries showing

15  AmeriCredit refused to provide letter); Aho Decl. at Exh. 4, ¶7 (attaching

16  settlement letter and $50 payment with creditor).

17  AmeriCredit refused to provide the letter so Mr. Aho could get the

18  clearance required to get the job, despite having received confirmation from

19  Serco about the need to clear debt, and Mr. Aho's informing them that the first

20  step has to be DOD clearance and the letter. (Id., AC Aho 00058(AmeriCredit

21  notes showing received call from potential employer Serco stating he needs to

22  clear debts); AC Aho 00059-60(AmeriCredit demanding proof of employment

23  before will give him letter so he can get employment.);AC Aho 00060

24  (AmeriCredit stating "I can not establish an arrangement under these

25  circumstances.").)

26  The phone logs also show that on June 8, 2010, AmeriCredit wanted a

27  payment, even if it came from Mr. Aho's meager unemployment check, stating:

28  6/8/2010 adv him that I can not establish an arrangement under

Pl.'S OPP'N TO MOT. FOR SUMMARY JUDGEMENT , *Aho v. AmeriCredit* , Case No. 10cv1373 DMS-BLM   5

1    these circumstances, However, I will take that $100.00 that he has

2    left over from his unemployment checks each month....

3  (Exh. 2, Lindsey Decl., AC Aho 000059.)

4    Six days later, Mr. Aho sent a payment of $25 after consulting with a debt

5  relief firm that also told him to "pay what you can." (Aho Dep. 150:16-154:6.) He

6  made similar payments to other creditors around that same time. (See, e.g., Aho

7  Decl. at Exh. 4, ¶7 (attaching settlement letter and $50 payment with creditor);

8  Aho Dep. at 157:10-158:6.).)

9    In June of 2010, AmeriCredit renewed its listing of the over $9,000 alleged

10  debt on Mr. Aho's credit report.  (Aho Depo. Exhs. 28-30, 166:18-176:25.)

11  Frustrated again by AmeriCredit, Mr. Aho was unable to gather the necessary

12  letters of settlement  in a timely way that would have cleared his path to security

13  clearance and employment.  (Aho Dep. 193:3-195:4.)  In the last two weeks of

14  June 2010, Mr. Aho met with Mr. Lindsey and this case was filed on June 29,

15  2010. (Aho Dep. 156:2-10.)  Mr. Aho continues to make small payments of $25

16  when he can, and has paid at least $50. (Aho Dep. 164:2-20.)

17  **III.    ARGUMENT**

18    **A.  Legal Standard for Summary Judgment**

19    Summary judgment is properly granted only when no genuine and disputed

20  issues of material fact remain, and when, viewing the evidence most favorably to

21  the non-moving party, the movant is clearly entitled to prevail as a matter of law.

22  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986);

23  *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

24    AmeriCredit bears the burden of showing there is no material factual

25  dispute. *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1143 (N.D. Cal.

26  2005).  The Court must regard Mr. Aho's evidence as true, if supported by

27  affidavits or other evidentiary material.  *Celotex*, 477 U.S. at 324; *Eisenberg*, 815

28  F.2d at 1289.   The Court must draw all reasonable inferences in favor of Mr.

Aho, the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255; *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1992)(court draws all reasonable inferences in favor of the non-moving party, including questions of credibility  and of the weight that particular evidence is accorded).  The court determines whether the non-moving  party's "specific facts," coupled with disputed background or contextual facts, are such that a reasonable fact finder might return a verdict for the non-moving party. *T.W. Elec. Serv. v. Pac. Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987).

### B.    Mr. Aho is a Legitimate Customer of AmeriCredit Meeting Every Purpose of Proposition 64's Amendments to the UCL

On January 27, 2011, the California Supreme Court issued *Benson v. Kwikset Corp.*, 51 Cal.4th 310 (Jan. 27, 2011), definitively clarifying what the Proposition 64 amendments to UCL meant to accomplish.  "We conclude," the Court held, "Proposition 64 should be read in light of its apparent purposes, i.e., to eliminate standing for those who have not engaged in any business dealings with would-be defendants and thereby strip such unaffected parties of the ability to file "shakedown lawsuits," while preserving for actual victims of deception and other acts of unfair competition the ability to sue and enjoin such practices." Kwikset, 51 Cal.4th at 317.  *Kwikset* found Proposition 64 "plainly preserved standing for those who *had* had business dealings with a defendant and had lost

money or property as a result." *Id*. at 321.  Mr. Aho had clearly "engaged in business dealings" with AmeriCredit.  That Mr. Aho was AmeriCredit's customer, that AmeriCredit chose to repossess his vehicle, and that AmeriCredit is now pursuing him everyday for a deficiency parked on his credit report, are all uncontested facts.  Mr. Aho's history with AmeriCredit fulfills the fundamental purpose of Proposition 64, which was to prevent people from suing who had never done business with the defendant. *Id*. at 317, 335 ("In short, voters focused on curbing shakedown suits by parties who had never engaged in any transactions with would-be defendants.")

### C.  The UCL, Standing, & Causation Regarding Money Paid and the Loss of Mr. Aho's Vehicle

Defendant's fanciful causation arguments are both wrong on the facts and based on a misunderstanding of the law. Furthermore, no matter the precise requirements of causation, except in the rare case where the undisputed facts leave no room for reasonable difference, causation is a question of fact inappropriate for summary judgment.  *Alliance Mortgage Co. v. Rothwell*, 10 Cal.4th 1226, 1239 (1995).

California Business and Professions Code §17200, *et seq*. (the "UCL"), prohibits three separate types of wrongs: unlawful practices, unfair practices, and fraudulent practices.  *Committee on Children's Television v. General Foods Corp*., 35 Cal.3d 197, 210 (1983).[1]  Defendant's brief fails to address the fact that UCL causation regarding the "unlawful" and "unfair" prongs of Mr. Aho's claims do not require a showing of "reliance."  *Kwikset* and *In re Tobacco II* both clearly stated that there are categories of "unlawful/unfair" conduct (rather than "fraudulent") that do not require "reliance."  *Kwikset*, 51 Cal. 4th at 327; *In re*

---

[1]The prohibitions operate in the disjunctive, meaning a practice is prohibited if it violates any one of the three prongs. *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158 (2002).

*Tobacco II*, 46 Cal.4th 298 at 325, n. 17 (2009).   As the California Supreme

Court stated regarding reliance:

> We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory involving false advertising and misrepresentations to consumers. The UCL defines "unfair competition" as "includ[ing] any unlawful, unfair or fraudulent business act or practice … ." (§ 17200.) There are *doubtless many types* of unfair business practices in which the concept of reliance, as discussed here, has no application.

*In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009); *see also Hall v. Time Inc.*,

158 Cal.App.4th 847, 855 (2008) ("The phrase 'as a result of' [in Business and

Professions Code section 17204] in its plain and ordinary sense means 'caused

by' and requires a showing of a causal connection *or* reliance on the alleged

misrepresentation.") (Italics added.)

For the unlawful business practice prong, the UCL "borrows" violations

from other laws by making them independently actionable as unfair competitive

practices. *Korea Supply Co. v. Lockheed Martin Corp.* 29 Cal.4th 1134,

1143(2003); *Troyk v. Farmers Group, Inc.*, 171 Cal.App.4th 1305, 1335 (2009).

Virtually any law-federal, state or local-can serve as a predicate for a UCL action.

*Troyk*, at 1335. Mr. Aho's lawsuit involves two separate laws that AmeriCredit is

systematically violating. These are the predicates for her unlawful business

practice claims.

First, AmeriCredit is violating Civil Code § 2983.2(a) by collecting and

attempting to collect deficiency claims that are invalid because of its failure to

send its customers code-compliant notices of intent (NOIs) to dispose of

repossessed or surrendered vehicles. Because AmeriCredit failed to send proper

NOIs, the consumers are not liable for those deficiency balances. *Id.*, *see also*

*Bank of America v. Lallana*, 19 Cal.4th 203, 215 (1998); *Fireside Bank v. Superior*

*Court*, 40 Cal.4th 1069, 1090 (2007); *Juarez v. Arcadia Financial, Ltd.*, 152

Cal.App.4th 889, 914 (2007). Collecting on invalid deficiency claims is an

unlawful business practice. *Id*. Second, AmeriCredit is violating Civil Code §

1785.25(a), *et al.*, by reporting those invalid deficiency claims to credit bureaus as debts that are owed by the Class Members. Civil Code § 1785.25(a) prohibits AmeriCredit from furnishing information to credit bureaus if it "knows or should know the information is…inaccurate."

There can be no clearer example of unlawful and unfair conduct that should not require "reliance" than that alleged here: the pursuit of debt that AmeriCredit never had a right to pursue.  In fact, the ASFA, which AmeriCredit violated with its defective NOI, and which serves as predicate unlawful act, is a "strict liability" statute.  *See Lewis v. Robinson Ford*, 156 Cal. App. 4th 359, 370-71 (2007).  Similarly, the general law on deficiencies and security interests makes effective NOIs a condition precedent to the right to pursue a deficiency. The ASFA expressly provides that the customer is liable for the deficiency only if the finance company sent an NOI that fully complied with its notice requirements. Civil Code § 2983.2(a). This is a codification of California's long-standing "absolute bar" rule. It reflects the balance the legislature struck when it allowed creditors the rare and powerful right to seize and sell collateral without judicial process. In exchange for this provisional remedy-akin to a forfeiture-the law requires strict adherence to consumer protections written into the statute and mandates a strong penalty when creditors fail to comply.

The absolute bar rule has long been the rule in California. *Metheny v. Davis,* 107 Cal.App.137 (1930); *Rocky Mountain Export Co. v. Colquitt,* 179 Cal.App.2d 204 (1960). The Legislature incorporated it in California's Commercial Code. *Atlas Thrift v. Horan*, 27 Cal.App.3d 999, 1009 (1972) "the right to a deficiency judgment depends on compliance with the statutory requirements concerning dispositions and notice"); *Union Safe Deposit Bank v. Floyd,* 76 Cal.App.4th 25, 30(1999) (notice of sale of helicopter was defective under Comm.Code § 9504(3), barring deficiency judgment, because it was unclear when the sale would take place, and whether the sale was public or private); *Ford*

1   *Motor Credit Company v. Price,* 163 Cal.App.3d 745, 751(1985); *CIT Corporation*

2   *v. Anwright,* 191 Cal.App.3d 1420, 1422-1423 (1987)(changing the place of sale

3   a few blocks rendered the notice defective and barred a lender's deficiency

4   notwithstanding lack of prejudice).

5       As the California Supreme Court explained in the first ASFA case on this

6   issue: "The rule and requirement are simple. If the secured creditor wishes a

7   deficiency judgment he must obey the law. If he does not obey the law, he may

8   not have his deficiency judgment." *Bank of America v. Lallana*, 19 Cal.4th 203,

9   215 (1998) (citation and internal quotations omitted). Because AmeriCredit failed

10  to send a code-compliant NOI, it lost its deficiency claim.

11      There is simply no reason to require more "causation" than showing that a

12  deficiency was pursued and that economic injury flows from the pursuit.

13      It is undisputed that Mr. Aho paid $25 to AmeriCredit after it demanded

14  more than $9,000 on the deficiency claim and offered to enter an agreement to

15  settle for $100 installments out of his meager unemployment benefits a few days

16  before.  He felt he needed to pay what he could because AmeriCredit was the

17  major obstacle to his reinstatement as an Installation Specialist.  The record

18  repeatedly shows Mr. Aho was doing what AmeriCredit told him to do, what the

19  DOD told him to do, and what a debt counselor (not a lawyer as defendant

20  misrepresents) told him to do: pay what you can, make arrangements to pay off

21  the whole. His payment of money, as wrongfully required and requested by

22  AmeriCredit, constitutes "injury in fact" and "economic injury" for purposes of Bus.

23  & Prof. Code § 17204.

24      AmeriCredit, on the one hand, admits Mr. Aho "solicited settlement offers"

25  from it, but, on the other hand, argues vociferously he had no intent to settle his

26  alleged debt.  (Def.' P&A at 12:9-10).  This simply makes no sense.  If Mr. Aho

27  was only interested in "manufactured standing," why would he seek a

28  compromise of his claims?  This self-contradictory argument belies AmeriCredit's

1   position. It certainly is not fodder for summary judgment.

2       Just as importantly, the pure conjecture that Mr. Aho's attorneys made him

3   pay and made him attempt to settle his claims to fake the obvious fact that a

4   $9,000 delinquency on his credit report is injurious, is both untrue and entirely

5   unsupported by record evidence.

6       Mr. Aho has testified at length regarding the long saga of his struggles with

7   AmeriCredit over the course of a 7-hour deposition.  Defendant totally ignores Mr.

8   Aho's clear statement that he was certain he did not "first consult with" his current

9   attorney, Mr. Lindsey, until *after* June 14 of 2010 and *after* having made his first

10  payment to AmeriCredit. (Aho Dep. 154:19- 156:2-10.)  They also failed to

11  provide his testimony that he did not meet with Mr. Lindsey in May 2010 (Aho

12  Dep. 100:11-15.)  They also cut off the excerpt of deposition transcript they

13  otherwise list at length in their P&A where Mr. Aho says he met with his attorney

14  "a week or a month" before the Complaint (June 29) and that he wasn't sure

15  when he called in relation to when he ran his internet search.  (Aho Dep.

16  109:4:20.)  Defendant simply is misstating the record.

17      Defendant's speculative reachings on the facts do not even follow the legal

18  requirements.  *Fireside Bank v. Superior Court*, 40 Cal.4th 268 (2007) is

19  instructive. *Fireside* was a UCL class action against an auto finance lender that

20  was collecting on invalid deficiency claims. Fireside tried to collect from the

21  plaintiff, Ms. Gonzalez, who had not attempted to redeem or reinstate. After the

22  trial court certified the class and granted her motion for judgment on the

23  pleadings, Fireside asked the California Supreme Court to decertify the Class.

24  Among other things, it claimed Ms Gonzalez lacked standing. The Supreme Court

25  rejected that argument:

26          Gonzalez has standing. She, like other members of the putative
    class, was subjected to the same alleged wrong: deprivation of a fair
27          opportunity to redeem the financed vehicle, followed by an unlawful
    demand for payment. The record demonstrates Fireside Bank
28          repossessed Gonzalez's vehicle and pursued a deficiency judgment

against her. She thus has standing to seek a declaration that Fireside Bank is unlawfully asserting a debt against her, as well as an injunction against all further collection efforts. The record further shows Gonzalez (or someone on her behalf) made a postrepossession payment against the alleged deficiency; upon proof she made that payment, Gonzalez also has standing to seek restitution.

*Fireside Bank*, at 1090; *see also Kwikset*, 51 Cal.4th at 325 (approving *Fireside Bank*). The Court did not require Ms. Gonzalez to show reliance, nor did she have to show more than denial of a fair opportunity to reinstate.  There is not even a debate that this is exactly what Mr. Aho was denied.

Even where reliance is a requirement, such as under the "fraudulent prong of the UCL, a presumption of causation arises when there is a showing that a misrepresentation was material.  *Engalla v. Permanente Medical Group, Inc.,* 15 Cal.4th 951, 977 (1997).   In this case, a misrepresentation is that the deficiency is or will be legally due and owing, as the pursuit of debt and the NOI show.  A fact is judged to be "material" if "a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question," and as such materiality is generally a question of fact unless the "fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." *Id*.

Thus, under the fraud prong only, Mr. Aho need only make a showing that the misrepresentation was material, and that therefore a reasonable trier of fact could infer reliance from such misrepresentations, in order to survive this summary-judgment-like proceeding, absent evidence conclusively rebutting reliance. *Id*.  That reliance may be demonstrated by Plaintiff's actions or his refraining from action.  *Benson v. Kwikset*, 51 Cal.4th at 327.

Regarding the element of reliance in fraud claims, at the summary judgment stage, all that is needed to show is that the defendant's acts "substantially influenced" Mr. Aho's actions.  *Sangster v. Paethkau* (1998) 68 Cal.App.4th 151,

170.  He does not need to show that Americredit's acts were the sole cause of economic injury, just that they were a substantial factor in causing injury. Id.  As the California Supreme Court held in *Kwikset*, a UCL plaintiff need *not* produce evidence that defendant's acts were "the sole or even decisive cause of the injury-producing conduct." *Kwikset*, 51 Cal.4th at 327 (citing *In re Tobacco II Cases*, 46 Cal.4th at 325, n. 17).

It is undisputed that Mr. Aho was unable to reinstate his contract.  Mr. Aho, unlike the defendant claims, has not changed his testimony.   He merely states that he wanted to reinstate, believes he probably could have raised the money, but was frustrated with and deterred by AmeriCredit's "moving target" statements about how much he owed. Both his payment of money, as wrongfully required and requested by AmeriCredit, and the loss of his vehicle constitute "injury in fact" and "economic injury" for purposes of Bus. & Prof. Code § 17204.  *Benson v. Kwikset Corp*., 51 Cal.4th 310, 323 (2011)(payment of money or loss of property are clear examples of "economic injury").

### D.    Mr. Aho Has UCL Standing: Economic Injury and AmeriCredit's Derogatory Credit Reporting

It is undisputed that AmeriCredit has reported the deficiency debt to the credit reporting agencies, Experian, Equifax and Trans Union.  This provides a wholly separate ground for Mr. Aho's UCL standing.

*Kwikset* makes clear that Proposition 64's "loss of money or property" means "economic injury." *Kwikset*, at 322 ("a loss or deprivation of money or property... i.e., *economic injury*.").  As *Kwikse*t holds: "The plain import of [Proposition 64] is that a plaintiff now must demonstrate some form of economic injury." *Id*. at 323.  The Court defined  "economic injury" broadly to include such things as the diminishment of present or future asset, increased transaction costs, and the surrender of more in a transaction than one would have.  *Id*. at 323, 336. As with Article III standing, in addition, there need be only some

1   "identifiable trifle" of injury for standing.  *Id*.  In fact, the Court held, the UCL's
2   remedial scheme focuses on injunctive relief and the restitutionary relief or
3   damages have always been secondary and should not eclipse its primary focus.
4   *Id*. at 337.

5       The Ninth Circuit Court of Appeals and several District Court's have held
6   that derogatory credit reporting is plainly sufficient economic injury to satisfy UCL
7   standing after the Proposition 64's amendments.  In *White v. TransUnion, LLC*,
8   462 F.Supp.2d 1079 (C.D. Cal. 2006) the Court held "[t]he perpetration of Credit
9   Reports containing inaccurate erroneous information regarding 'due and owing'
10  debts is a sufficient injury to grant Plaintiff's standing" and that a loss of such an
11  important interest does not mean the defendant has to have acquired it for itself.

12      Plaintiffs do satisfy the UCL's standing requirements because they
13      have alleged injury-in-fact and a loss of income as a result of
14      unlawful competition. See SACC P 95 ("Plaintiffs and the Class have
15      suffered … loss of money or property[.]"). This is all that the statute
16      requires. In particular, the statute does not require that the losses in
17      question were the product of the defendant's wrongful acquisition of
18      the plaintiffs property. *See Trew v. Volvo Cars of N. Am*., 2006 U.S.
19      Dist. LEXIS 4890, at * 17 (C.D. Cal. 2006) (allegations that defective
20      automobile part certain to fail sufficient to confer UCL standing). **The**
21      **perpetration of Credit Reports containing inaccurate erroneous**
22      **information regarding "due and owing" debts is a sufficient**
23      **injury to grant Plaintiffs standing**.

24  *White*, 462 F. Supp. 2d at 1084.  AmeriCredit's alleged "perpetration of Credit
25  Reports containing inaccurate erroneous information regarding 'due and owing
26  debts'" is exactly involved in Mr. Aho's case.  He clearly has standing.

27      The Ninth Circuit Court of Appeals, too, holds that damage to credit
28  constitutes UCL standing and economic injury, approving the holding in *White*.

1    Rubio has alleged a loss of money or property. When Capital One

2    increased the APR from 6.99% to 15.9%, it gave Rubio a choice

3    either to close the account and pay off the outstanding balance, or to

4    keep the account open and accept the increased APR. Rubio does

5    not allege which choice she accepted, though either would cause a

6    loss of money or property. If she closed the account, she would have

7    suffered a monetary loss by losing the credit that Capital One

8    extended. *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1084

9    (C.D. Cal. 2006) (ruling that damage to credit was loss of money or

10   property).

11   *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010).

12          Subsequent Ninth Circuit Court's cases have, as they must, followed *Rubio*

13   and held credit damage is sufficient for UCL standing. *Marks v. Green Tree*

14   *Servicing*, 2010 U.S. Dist. LEXIS 119979, at *9 (N.D. Cal. Oct. 27, 2010)

15   ("[D]amage to credit is a "'loss of money or property'"); *Velasquez v. Chase*

16   *Home Fin. LLC*, 2010 U.S. Dist. LEXIS 82065, at *22(N.D. Cal. Aug. 11, 2010)

17   ("Examples of loss of money or property sufficient to confer standing under the

18   UCL include allegations of damage to a consumer's credit score, or payment of

19   extra money as a result of defendant's conduct.").[2]

20          Plaintiff's expert, Mr. Evan Hendricks, who, along with Professor Elizabeth

21   Warren, was an expert for the plaintiffs in *White*, details the myriad economic

22   injuries to Mr. Aho's fundamentally important economic asset – his credit.  Mr.

23   Hendricks describes how credit scoring and reports constitute a vital economic

24   asset and how the AmeriCredit derogatory report constitues a "major derogatory"

25   listing, negatively impacting Mr. Aho's FICO score, for instance.  (Hendricks Decl.

26

27          [2]In the *Bankston v. AmeriCredit* case, decided **after** the *Kwikset* decsion,
     the Court held the Plaintiff had not pleaded credit injury or supplied proof of credit
28   bureau reporting. The Court did not even address *Rubio*.

at ¶¶ 1-24.)  Mr. Hendriks, furthermore, finds that AmeriCredit's derogatory report was the "deal-killer" for Mr. Aho's attempt to regain his most advantageous employment and security clearance, landing Mr. Aho in "credit jail."  (Id. at ¶¶10,19.) The effects on Mr. Aho's specific employment regarding the AmeriCredit debt are also confirmed by Mr. Gonzales, the Serco personnel director to whom Mr. Aho made application.  (Gonzales Decl. at ¶6.)

AmeriCredit has made derogatory reports on Mr. Aho to the Credit Bureaus, and continues to report him to this day! AmeriCredit refused to provide any timely written agreement, without which Mr. Aho faced an insurmountable hurdle to regaining his employment – a nearly $10,000 debt he never in fact owed.  Mr. Aho clearly has identified at least a "trifle" of economic injury required for UCL standing just through the credit injury alone.

### E.  Mr. Aho Has Article III Standing

As Mr. Aho has UCL standing, he automatically has Article III standing. See Kwikset, at 324-25. Under federal law, injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) 'actual or imminent, not "conjectural" or "hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992); see also  Associated Builders & Contractors, Inc. v. San Francisco Airports Com. (1999) 21 Cal.4th 352, 362 (1999). "Particularized" in this context means simply that "the injury must affect the plaintiff in a personal and individual way." (Lujan, at  560, fn. 1.)

There can be no doubt Mr. Aho has a legally protected interest in his credit and credit report.  See Fireside Bank at 1090. Nor is there any dispute that AmeriCredit has in the past, and continues to, make derogatory reports about the deficiency allegedly owed and maintains the validity of this debt.  There is without question an ongoing, actual dispute over this alleged debt and the related credit reporting.  Defendant simply ignores this fact, just as it entirely ignores Mr. Aho's

separate and distinct Declaratory Relief claim, when it argues there is no Article III standing.  Mr. Aho has the right to not have his employment or security clearance interfered with any longer, and to be free of derogatory credit reporting. This is sufficient for Article III standing.

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a). The decisions interpreting this Act  have required that the dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-127 (2007)(citations omitted).  In *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941), the Court summarized as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Mr. Aho's dispute and request to declare the deficiency invalid and unenforceable is enough for Article III standing, in addition to, and separate from all his other claims.

### E.     Mr. Aho's Claims Are Not Time-Barred

As with the preemption argument below, AmeriCredit thought so highly of this argument that it waited until now, long after the first round of Motions to Dismiss, to raise them.  They are transparently without merit.

AmeriCredit admits that *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) hold that

1   individual lawsuits are tolled by previously filed class actions.  (Def.s P&A at 16.)

2   The individual case of Mr. Aho is the only issue on this Motion for Summary

3   Judgment.  There are no class members presently in this case as the case has

4   yet to be certified.  As to Mr. Aho, at the very least, his case was therefore

5   expressly tolled during the pendency of the *Arguelles-Romero* and *Smith v.*

6   *AmeriCredit* cases.  (See Request for Judicial Notice, Exh. 1.) None of the cases

7   Defendant cites dismiss an individual case like that of Mr. Aho's.  Nothing

8   prevents Mr. Aho seeking relief on his own behalf in this Court now, which is the

9   only issue at this stage of the proceedings. *See Catholic Social Servs. v. INS*,

10  232 F.3d 1139, 1147 (9th Cir. Cal. 2000) ("There is no dispute that if members of

11  the class in CSS V had filed individual actions after the dismissal of their class

12  action, the statute of limitations would have been tolled for those individual

13  actions.").

14          Even with regard to the class issues (not currently before the Court),

15  defendant misreads the most recent Ninth Circuit law, clarifying the *Robbin* line of

16  cases.  In *Catholic Social Services*, 232 F.3d 1139 (9th Cir. 2000), the Court

17  clarified that the concern is that plaintiff's not attempt to relitigate *denials* of class

18  certification.  No such denial has been made by any Court regarding claims

19  against AmeriCredit.  The language AmeriCredit cites is taken out of context. It is

20  only <u>when a denial of a previous motion for class certification or a decertification</u>

21  <u>has been made </u>in an earlier case, that a new *class* is not fully tolled if all the new

22  representatives are doing is relitigating the class denial or decertification or curing

23  the reason for either.   *Catholic Social Services*, 232 F.3d at 1148-50.  There was

24  no Rule 23 (class action Rule) "procedural deficiency" leading to class

25  certification being denied or decertified in *Arguelles-Romero*  – no class

26  certification motion was ever even brought.

27          In any event, Defendant's argument that Mr. Aho has attempted to "plead

28

1  around the deficiencies that led to dismissal (and later stay) of Arguelles-Romero"

2  is entirely unexplained.  There was no such effort or Rule 23 deficiency. Mr. Aho

3  is not relitigating anything, for that matter.

4        Defendant's cross-jurisdictional tolling argument tolling is fundamentally

5  flawed, too.  This is simply not an example of cross-jurisdictional tolling as in

6  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008).  This is a

7  California plaintiff, Mr. Aho, seeking tolling from a California state court action.

8  Clemens involved a California plaintiff seeking tolling based on an Illinois state

9  court action.  None of the jurisprudential concerns expressed by tolling based on

10 foreign jurisdictions are present when no foreign jurisdiction is involved.[3]  *See*

11 *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1189 (9th Cir. 2009)(finding if the original

12 class action had been filed in California, all (and only) California resident's claims

13 would be tolled).

14       Finally, Mr. Aho's Rosenthal Act claim is not time-barred either.  False

15 derogatory credit reporting is a long-recognized and actionable form of debt

16 collection under state and federal law. *Rivera v. Bank One*, 145 F.R.D. 64, 623

17 (D.P.R. 1993) (credit reporting is a "powerful tool designed, in part, to wrench

18 compliance with payment terms."); *Brady v. Credit Recovery Co.*, 160 F.2d 64 (1[st]

19 Cir. 1998); *Wallace v. King*, 2000 Tex.App. Lexis 5879 (Tex.Civ.App. 2010).

20 Plaintiff has provided undisputed evidence that collections activity included

21 AmeriCredit's June 2010 credit reporting on the AmeriCredit debt.  (Aho Dep.

22 109:21-111:15;AC Aho 000046-51 (AC phone log of 2010 contacts);  Aho Depo.

23 Exhs. 28-30 (credit bureau reports, 166:18-176:25.).) As AmeriCredit was

24

_____

25       [3]The result in this case is a California plaintiff filing in a California federal
   district court. *Clemens* concern that California might not be able to "manage its
26 own judicial system" is simply not present. Here California state court will have
   less cases than it otherwise might have, not the opposite, which was *Clemens*
27 concern. In addition, all the interests the *Hatfield* Court noted California had in
   protecting its citizens apply here as well. Under both legal and equitable tolling,
28 Mr. Aho can pursue his claims.

1  engaged in collections in June of 2010, the same month in which he filed his

2  lawsuit, Mr. Aho's claims regarding those collections are well within any statute of

3  limitations.

4      **F.**    **Mr. Aho's Claims Are Not Preempted**

5      AmeriCredit argues Mr. Aho's Civil Code §1785.25 claim is pre-empted by

6  the federal Fair Credit Reporting Act ("FCRA").  However, in 2009 the Ninth

7  Circuit held that claims under Civil Code §1785.25 and §1785.34 are not

8  pre-empted by §1681t(b)(1)(F) of the FCRA. *Gorman v. Wolpoff & Abramson*,

9  LLC, 552 F.3d 1008, 1032 (9th Cir. 2009).   Defendant relies on case law prior to

10  the Ninth Circuit's 2009 decision.   Moreover, the California Court of Appeals held

11  that the FCRA does not pre-empt California's credit reporting statute. *Cisneros v.*

12  *U.D. Registry, Inc.* 39 Cal. App. 4th 548, 578 (FCRA does not pre-empt

13  California's credit reporting statute, the California Consumer Reporting Agencies

14  Act).

15      Defendant advances no arguments why the UCL claim should be

16  preempted when the Rosenthal Act claim, which it incorporates as an unlawful

17  act actionable under the UCL, is not preempted.  Neither statute is any way

18  inconsistent with the FCRA and defendant fails to explain its argument or why it

19  relies on overruled authority.

20  **IV.**   **CONCLUSION**

21      Plaintiff, Mr. Steven D. Aho, respectfully request Defendant's Motion for

22  Summary Judgement be denied in full.

23  April 15, 2011

24                            /s/Michael E. Lindsey

25                            Michael E. Lindsey
                             Attorney for Plaintiff

26

27

28

PROOF OF SERVICE
(Sections 1013a, 2015.5 C.C.P.)

STATE OF CALIFORNIA     )
                        ) ss.
COUNTY OF SAN DIEGO )

I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: **16870 W. Bernardo Dr., Ste. 400, San Diego, CA 92127.**

On the date shown below,  I served the foregoing document described as:

**MOTION FOR CLASS CERTIFICATION**
Aho v. AmeriCredit , Case No. 10cv1373 MMA POR

to the interested parties in this action by mail at San Diego, California addressed as follows:

Peter S. Hecker
Sheppard Mullin Richter & Hampton LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA, 94111-4109

[X]     **(BY EFILE)** The above document was served on the interested party named above by electronic means via Efile.

[]      **(BY MAIL)**  The envelope was mailed with postage thereon fully prepaid.  As follows:  I am "readily familiar" with this office's practice of collecting and processing correspondence for mailing.  Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at San Diego, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]     **(BY PERSONAL SERVICE)** I caused to be delivered such envelope by hand to the addressee.

[X]     **(FEDERAL]** I declare that I am a member of the bar of this court.

Executed on April 15, 2011, at San Diego, California.

/s/ John W. Hanson
John W. Hanson