1   JOHN W. HANSON (SBN: 214771)
    THE HANSON LAW FIRM
2   16870 West Bernardo Drive, Suite 400
3   San Diego, CA 92127
    Telephone:  (858) 451-0291
4   Email: john@thesandiegolemonlawyer.com

5   MICHAEL E. LINDSEY (SBN: 99044)
    ATTORNEY AT LAW
6   4455 Morena Blvd., Ste. 207
    San Diego, CA 92117-4325
7   Phone: (858) 270-7000
    EMail: mlindsey@lemonlawcenter.com
8
    CAROL MCLEAN BREWER
9   ANDREW J. OGILVIE
    ANDERSON, OGILVIE & BREWER LLP
10  600 California Street, 18th Floor
    San Francisco, CA 94108
11  Phone: (415) 651-1953
    Fax; (415) 956-3233
12  EMail: carol@aoblawyers.com;
            andy@aoblawyers.com
13
    Attorneys for Plaintiffs

14                 UNITED STATES DISTRICT COURT

15               SOUTHERN DISTRICT OF CALIFORNIA

16

17  **IN RE:**                              ) Case No.:
                                            )
18                                          )
    **AMERICREDIT FINANCIAL SERVICES,**     ) **CLASS ACTION**
19  **INC. LITIGATION**                     )
                                            ) MEMORANDUM OF POINTS &
20  Included Actions:                       ) AUTHORITIES RE: UNOPPOSED
                                            ) APPLICATION FOR ENTRY OF ORDER
21  *Robert Smith v. AmeriCredit Financial* ) PRELIMINARILY  APPROVING
22  *Services, Inc., d.b.a. ACF Financial Services,* ) SETTLEMENT AND CLASS NOTICE
    *Inc.*, United States District Court, Southern ) PROGRAM
23  District of California, Case No. 09-CV-01076- )
24  DMS-BLM                                 ) [FRCP 23(e)]
                                            )
25  *Brandi N. Bankston v. AmeriCredit Financial* )
    *Services, Inc. and DOES 1-10, inclusive*, )
26  United States District Court, Northern District )
    of California, Case No. 09-CV-4892 SBA after ) Courtroom:        10
27  removal from San Francisco Superior Court ) Judge:        Hon. Dana M. Sabraw
28  (Case No. CGC-09-493135)                )

| | |
|---|---|
| 1 | ) |
| 2 | *Juan A. Cárdenas and Florencia Herrera de* ) |
| | *Cárdenas v. AmeriCredit Financial Services,* ) |
| 3 | *Inc. and DOES 1-10, inclusive*, United States ) |
| | District Court, Northern District of California, ) |
| 4 | Case No. 09-CV-4978 SBA after removal from ) |
| | San Francisco Superior Court (Case No. CGC- ) |
| 5 | 09-493248) ) |
| | ) |
| 6 | *Stephen D. Aho v. AmeriCredit Financial* ) |
| 7 | *Services, Inc., d.b.a. ACF Financial Services,* ) |
| | *Inc.*, United States District Court, Southern ) |
| 8 | District of California, Case No.: 10-CV-1373- ) |
| | DMS-BLM ) |
| 9 | ) |
| | *Michael Frank Machado v. AmeriCredit* ) |
| 10 | *Financial Services, Inc., d.b.a. ACF Financial* ) |
| 11 | *Services, Inc. / General Motors Financial* ) |
| | *Company, Inc., a business entity form* ) |
| 12 | *unknown*, United States District Court, ) |
| | Southern District of California, Case No.: 11- ) |
| 13 | cv-1398 DMS-BLM ) |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED
APPLICATION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. i

II.    BACKGROUND ............................................................................................ 2

    A.   Steven D. Aho ......................................................................................... 8

    B.   Robert Smith ........................................................................................... 8

    C.   Michael Machado .................................................................................... 8

    D.   Brandi Bankston ...................................................................................... 8

    E.   Mr. and Mrs. Cardenas ........................................................................... 8

    F.   The Consolidated Complaint and Coordinated Mediation Efforts ........ 8

    G.   The Requirements Of The ASFA ............................................................ 8

III.   TERMS OF SETTLEMENT ......................................................................... 9

    A.   Certification Of Settlement Class .......................................................... 10

    B.   Benefits To Class Members .................................................................... 10

             1.   An End to All Collection Activity And Debt Claims ................... 5

             2.   Credit Repair  ............................................................................... 6

             3.   Restitution  .................................................................................... 7

    C.   Settlement Administration ...................................................................... 12

    D.   Service Awards To Class Representatives .............................................. 12

    E.   Attorneys' Fees ...................................................................................... 12

    F.   Residual Funds ....................................................................................... 13

    G.   Releases................................................................................................... 13

    H.   Class Notice ........................................................................................... 14

             1.   Right to Opt Out or Object........................................................... 9

IV.   ARGUMENT ................................................................................................. 15

    A.   The Standard For Review Of A Class Action Settlement....................... 15

    B.   The Court Should Grant Preliminary Approval Of The Proposed Class Settlement In This Case................................................................. 17

             1.   The Case Meets all Requirements for Class Certification ......... 11

             2.   The Settlement Provides Excellent Relief for the Class ............ 12

                 a.   The benefits achieved are excellent and fair........................ 12

                 b.   The Settlement is based on a complete understanding of the issues....12

i

c.    The Settlement was achieved through arms-length negotiation between skilled and experienced counsel ...........................................13

d.    The proposed fee and service awards are reasonable ..........................13

VI.    CONCLUSION.................................................................................................. 21

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Bank of America v. Lallana*
(1998) 19 Cal.4th 203 ................................................................................................ 3, 12

*Cerra v. Blackstone*
(1985) 172 Cal. App. 3d 604 .......................................................................................... 2

*Class Plaintiffs v. City of Seattle*
(9th Cir. 1992) 955 F.2d 1268, cert. denied, 506 U.S. 953.......................................... 10

*Dunk v. Ford Motor Co.*
(1996) 48 Cal.App.4th 1794 .................................................................................... 10, 11

*Fireside Bank v. Superior Court*
40 Cal.4th 1069 (2007) ................................................................................................ 12

*In re AremisSoft Corp. Sec. Litig.*
210 F.R.D. 109 (D.N.J. 2002) ...................................................................................... 14

*In Re GNC Shareholders Litigation*
668 F.Supp. 450 (W.D. Pa. 1987)................................................................................ 15

*In Re M.D.C. Holdings Securities Litigation*
Fed.Sec.L.Rep. (CCH) (S.D.Cal. 1990) ...................................................................... 14

*In Re Thortec Int'l Securities Litig.*
C-88-2470-FMS (N.D.Cal. 1989) ................................................................................ 15

*In re: Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ........................................................................................ 15

*Juarez v. Arcadia Financial, Ltd.*
152 Cal.App.4th 889 (2007) ..................................................................................... 3, 12

*Linder v. Thrifty Oil,*
(2000) 23 Cal.4th 429 ................................................................................................... 11

*North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs.*
(1994) 27 Cal.App.4th 1085 ......................................................................................... 10

*Paul, Jonson, Alston & Hunt v. Graulty*
886 F. 2d 268 (9th Cir. 1989) ....................................................................................... 14

*Potter v. Pacific Coast Lumber Co.*
(1951) 37 Cal.2d 592 .................................................................................................... 10

*Sav-On Drug Stores, Inc. v. Superior Court,*
(2004) 34 Cal.4th 319 ................................................................................................... 11

*Staton v. Boeing Co.,*
327 F.3d 938 (9th Cir. 2003) ................................................................................... 13, 15

*Union Safe Deposit Bank v. Floyd*
(1999) 76 Cal.App.4th 25 ............................................................................................... 3

*Van Bronkhorst v. Safeco Corp.*
(9th Cir. 1976) 529 F.2d 943 ............................................................................ 10

*Van Vranken v. Atlantic Richfield Co.*
901 F.Supp.294 (N.D.Cal. 1994) .................................................................... 15

*Wershba v. Apple Computer*
(2001) 91 Cal.App.4th 224 ........................................................................ 10, 11

S<small>TATUTES</small> & R<small>ULES</small>

Business and Professions Code §17200 ........................................................... 2

Cal. U.C.C. §3604 ............................................................................................. 3

Fed. R. Civ. P. 23(e) ....................................................................................... 10

Civil Code §1788 ............................................................................................... 2

Civil Code §2983.2 ............................................................................................ 3

Civil Code §2983.4 ............................................................................................ 7

Civil Code §2983.8 ............................................................................................ 3

Civil Code §2984.4 .......................................................................................... 12

Code of Civil Procedure §1021.5 ..................................................................... 7

O<small>THER</small> A<small>UTHORITIES</small>

H. Newberg & A. Conte, <u>Newberg on Class Actions</u> (4th ed. 2002) ............ 10

Manual for Complex Litigation, Fourth §23.14 (West Ed. 2004) ................. 14

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

## I.   <u>INTRODUCTION</u>

Plaintiffs seek preliminary approval of a $388 million class action settlement that constitutes an extraordinary result for thousands of California consumers injured by AmeriCredit Financial Services, Inc.'s ("AmeriCredit") violations of the California Automobile Sales Finance Act ("ASFA" or the "Rees-Levering Act"), Civil Code §2981, *et seq*.  If approved by this Court, the settlement will protect some 35,424 identified Plaintiff Settlement Class[1] members from any further efforts by AmeriCredit to collect over $384 million in claimed deficiency balances, will provide restitution of over $4.3 million for the Plaintiff Settlement Class members who paid all or a part of the deficiency balances, and will result in the correction of the credit histories of the over 35,000 Plaintiff Settlement Class members.  All of this relief will be provided without any sort of claims process, or other barrier to full and complete relief.

As demonstrated below, the Settlement should receive the Court's preliminary approval. It achieves comprehensive and concrete monetary and equitable relief, results from arms-length negotiations after substantial litigation between experienced counsel and from negotiations overseen by a neutral mediator, and is well within the range that would warrant the Court's final approval following notice to the Plaintiff Settlement Class.

Pursuant to Fed.R.Civ.P. 23(e), plaintiffs, therefore, request that the Court preliminarily approve the settlement and approve the form of notice to be sent to the Plaintiff Settlement Class in the form attached to the proposed Order and described in the Agreement, and that the Court enter an Order:

A.     preliminarily approving plaintiffs' proposed settlement with defendants;

B.     provisionally certifying the class for settlement purposes and approving the form and program of class notice described in the Agreement; and

C.     scheduling various deadlines (set forth below) leading up to a hearing before the

---

[1] "Plaintiff Settlement Class" is a defined term in the Settlement Agreement, and that term is used throughout these papers for ease of reference.  (May 2012 Settlement Agreement ("S.A.") ¶3.15.)

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

Court to determine whether the proposed settlement should be finally approved. (The accompanying Proposed Order assumes Preliminary Approval **_on or before June 6, 2012_**.   All dates in the Proposed Order are tied to this date certain in order to provide the necessary notice periods required by Code and statute. )

If the Court signs the Preliminary Approval Order submitted herewith and the Order is entered on or before June 6, 2012, the following dates should be approved:

| | |
|---|---|
| Class Notice Mailing: | June 20, 2012 |
| Filing of Motion for Final Approval: | August 10, 2012 |
| Deadline for filing Objections and Notices of Intention to Appear/Submitting Requests for Exclusion: | August 24, 2012 |
| Reply to any Objections: | September 11, 2012 |
| Final Approval Hearing: | September 21, 2012 at 1:30 p.m. |

## II.  BACKGROUND

### A.  Steven D. Aho

Plaintiff Steven D. Aho purchased a used 2004 Ford F150 from a San Diego County dealership on December 14, 2003.  Financing of the vehicle was arranged by the dealership through AmeriCredit, and Mr. Aho's Retail Installment Sales Contract ("RISC") was accordingly assigned to AmeriCredit.

On or about August 13, 2005, AmeriCredit repossessed Mr. Aho's truck.  On August 15, 2005, per California Civil Code § 2983.2,  AmeriCredit sent a notice of its intent to dispose of the repossessed vehicle ("NOI"), entitled "Notice of Our Plan to Sell Property." AmeriCredit then sold the vehicle and assessed a "deficiency" against him in the amount of $10,489.13.  A "deficiency" is the difference between the amount that AmeriCredit realized from the sale, minus any other credits, and the amount AmeriCredit claimed remained owing under the RISC.

2

Mr. Aho filed a class-action complaint against AmeriCredit on June 29, 2010 in United States District Court, Southern District. *Aho v. AmeriCredit*, 10-cv-1373-DMS-BLM. Mr. Aho alleged AmeriCredit failed to inform him of all amounts that he had to pay to AmeriCredit to cure the default, including additional monthly payments coming due after the date of the NOI but before the end of the notice period, any late fees or other fees and the amount of those fees, as well as fees regarding the report of repossession to government officials and the name and location of where those government fees were to be paid.  Trial was set for April 30, 2012.

On November 8, 2011, after finding AmeriCredit used the same NOI during the Class period, among other things, Judge Sabraw certified a class.  *Aho v. Americredit Fin. Servs.*, 277 F.R.D. 609, 2011 U.S. Dist. LEXIS 154705 (S.D. Cal., 2011); (*Aho v. AmeriCredit*, 10-cv-1373 DMS-BLM, [Doc. No. 72]).  The Class was defined as:

> All persons who were sent an NOI by AmeriCredit to an address in California at any time from March 18, 2005 through May 15, 2009, following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance. The class excludes persons whose obligations have been discharged in bankruptcy, persons against whom AmeriCredit has obtained final judgments in replevin actions, persons whose contracts include arbitration clauses that prohibit class membership, and persons who received NOIs that denied them the right to reinstate.

*Id*.

The Court also certified a sub-class of all consumers who have in fact paid any amount to AmeriCredit after repossession.  (Id.)  The class and sub-class both excluded California consumers whose RISCs  included arbitration clauses with class action bans.  (Id.)

The Court previously denied AmeriCredit's Motion to Dismiss/Stay on November 18, 2010, (*Aho v. AmeriCredit*, (Doc.No. 24)), and denied Defendant's Motion for Summary Judgment on June 8, 2011, (*Id*., (Doc.No. 60)).

Plaintiff filed a Motion for Summary Judgment on behalf of himself and all Class and

SubClass members on December 14, 2011.   On January 31, 2012, the Court granted the Class and SubClass summary judgment on liability and granted them declaratory relief holding the NOIs invalid under the ASFA.  *Aho v. AmeriCredit*, 2012 U.S. Dist. LEXIS 10998 (S.D.Cal. 2012)(Doc. No. 154).

On March 19, 2012, the Court approved the form Notice to the Class and Notice was subsequently provided to the *Aho* sub-class members. (*Aho*, (Doc. No. 184).)

The Court entered the Final Pre-Trial order on March 19, 2012, setting forth the remaining issues for trial. (*Aho*, (Doc. No. 186).)

**B.   Robert Smith**

On October 8, 2006, Mr.  Smith purchased a 2007 Chrysler 300, from a car dealership in San Diego, California. The contract was assigned to AmeriCredit.  AmeriCredit repossessed this vehicle after Mr. Smith defaulted on the RISC.  AmeriCredit sent Mr. Smith  an NOI, dated July 17, 2007.  The NOI also did not comply with the notice requirements of the Automobile Sales Finance Act (the "ASFA"), California Civil Code § 2981, et seq.  Mr.  Smith was unable to reinstate and AmeriCredit sold Mr.  Smith's Vehicle at a repossession sale.  Thereafter, AmeriCredit claimed that Plaintiff owed it the deficiency balance.  Mr. Smith's RISC contained an arbitration clause purporting to ban participation in a class action, among other things.

Mr. Smith filed a class action Complaint on May 18, 2009. *Smith v. AmeriCredit*, 09-cv-1076 DMS-BLM.

On October 5, 2009, AmeriCredit brought a Motion to Compel Arbitration which the Court granted.  Mr.  Smith appealed to the United States Court of Appeal.   The Ninth Circuit vacated the ruling and remanded for consideration in light of *AT&T Mobility v.  Concepcion*, __ U.S.___, 131 S. Ct. 1740, 179 L. Ed. 2d 742, 2011 U.S. LEXIS 3367 (U.S., April 27, 2011), and *Sanchez v.  Valencia Holding Co., LLC* 132 Cal.Rptr.3d 517, 2011 WL 5027488 (Cal.App.2

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

Dist., Nov. 23 2011)(review granted by *Sanchez v. Valencia Holding Company LLC*, 139 Cal.Rptr.3d 2 (Cal.S.Ct., March 21, 2012)).  *Smith v. AmeriCredit Fin. Servs.*, 2011 U.S. App. LEXIS 24644 (9th Cir. Cal., Dec. 13, 2011). The arbitration clause in Mr. Smith's RISC was virtually identical to the clause in *Sanchez*, and was the standard form automobile finance contract arbitration clause used throughout the state of California.

On March 12, 2012, the Court denied AmeriCredit's Renewed Motion to Compel Arbitration.  *Smith v. AmeriCredit*, 2012 U.S. Dist. LEXIS 32895; (*Smith v. AmeriCredit*, 09-cv-1076 DMS-BLM, [Doc.No. 69].)  AmeriCredit filed a Notice of Appeal on April 18, 2012.

**C.   Michael Machado**

Michael Machado purchased a 2003 Jeep Grand Cherokee from a California car dealership. The purchase was made pursuant to a RISC that the dealership assigned to AmeriCredit.  Defendant repossessed the vehicle after Mr. Machado defaulted on the RISC.

AmeriCredit sent Mr. Machado the same defective notice of its intent to dispose of the repossessed vehicle ("NOI"), that AmeriCredit sent the other Plaintiffs and Settlement Class Members.  Just as before, the NOI did not comply with the notice requirements the ASFA, California Civil Code § 2981, et seq.

Mr.  Machado was not given the opportunity to reinstate and AmeriCredit sold Mr. Machado's vehicle at a repossession sale. AmeriCredit periodically reported all Plaintiffs, and indeed all class members, to Credit Bureaus.  Mr. Machado alleged that the AmeriCredit deficiency was the primary stain on his credit.

Mr. Machado filed a class action Complaint on June 23, 2011.  *Machado v. AmeriCredit*, 11-cv-1398 (S.D.Cal.), alleging violations of state and federal fair credit reporting laws, *inter alia*.  Pursuant to AmeriCredit's opposed motion, the Court stayed the *Machado* case on October 3, 2011, pending resolution of the *Aho* case. (*Machado v. AmeriCredit*, (Doc.No. 18).)

### D.   Brandi Bankston

Ms. Brandi Bankston purchased a vehicle from a California car dealer that assigned the contract to AmeriCredit. The vehicle was repossessed by AmeriCredit when Ms. Bankston defaulted on her payments because the vehicle had mechanical problems that she could not afford to fix and stay current on the contract.  AmeriCredit sent her an NOI that failed to comply with the requirements of the ASFA.  AmeriCredit sold the vehicle at auction and received less than the balance due on the contract. It asserted that she owed that amount and dunned her for payment.  It has reported to credit bureaus that she owes the balance of the deficiency claim.

Ms. Bankston sued for AmeriCredit's violations of the UCL and sought restitution and declaratory and injunctive relief for the putative class.  *Bankston v. AmeriCredit*, United States District Court, Northern District of California, Case No. 09-CV-4892 SBA (after removal from San Francisco Superior Court (Case No. CGC-09-493135)). Shortly before the date set for trial, the District Court granted AmeriCredit's motion for summary judgment, holding that Ms. Bankston lacked standing to bring the lawsuit.  Ms. Bankston appealed. The appeal was fully briefed, but stayed pending this Settlement until July 18, 2012.

### E.   Mr. and Mrs. Cardenas

Juan Cardenas purchased a car on a RISC that was subsequently assigned to AmeriCredit. Florencia Cardenas, his wife, was not on the contract.  Mr. Cardenas defaulted on the contract. AmeriCredit repossessed, sent an NOI, and then sold the vehicle. AmeriCredit has dunned the Cardenases for payment and reported the alleged debt to the credit bureaus. The Cardenases paid more than $800 on the alleged deficiency claim.

The Cardenases sued for declaratory and injunctive relief only due to the arbitration/class action waiver provision in the RISC that Mr. Cardenas signed.  *Cardenas v. AmeriCredit*, United

States District Court, Northern District of California, Case No. 09-CV-4978 SBA, (after removal from San Francisco Superior Court (Case No. CGC-09-493248)).

AmeriCredit moved to compel arbitration but the District Court denied the motion because the Complaint was for injunctive relief only and  injunctive relief claims for classes are not arbitrable. AmeriCredit appealed. The appeal has been fully briefed, argued and submitted, but has been stayed pending this Settlement until September 4, 2012.

**F.  The Consolidated Complaint & Coordinated Mediation Efforts**

All the five (5) Complaints regarding the NOI at issue seek declaratory and injunctive relief in an effort to halt the collection of deficiency balances from class members.  Four of the five Complaints, the lone exception being the Cardenases' case, also seek restitution and damages in order to secure refunds of the amounts already collected.[2]  All five Complaints purport to cover largely the same class period and members.  Of the five cases pending against AmeriCredit, Smith, Machado, and Aho, are represented by John W. Hanson and Michael E. Lindsey;  Bankston and Cardenas are represented by Andrew J. Ogilvie and Carol M. Brewer.

As part of the negotiated settlement, the parties agreed to consolidate for settlement purposes all the AmeriCredit NOI Cases in the Southern District of California, before Judge Sabraw. (S.A. ¶¶3.01, 5.08.) In order to accomplish this, the parties have submitted a proposed Amended and Consolidated Complaint.

The NOIs sent by AmeriCredit to Aho, Smith, Bankston, Machado, and the Cardenases were a standard form notices.  The NOIs were identical in all material respects, in that each of them contained and omitted the same type of information.

---

[2] There was a sixth AmeriCredit NOI Class case regarding the NOI used by AmeriCredit from approximately March 2005 to May 2009, *Arguelles-Romero v. AmeriCredit*, Los Angeles Superior Court Case No., BC410509.  *Arguelles-Romero*, settled on an individual basis after an appeal of the Superior Court's decision regarding the class action ban in Mr. Arguelles-Romero's contract. *Arguelles-Romero v. AmeriCredit Fin. Servs.*, 184 Cal. App. 4th 825; 109 Cal. Rptr. 3d 289; 2010 Cal. App. LEXIS 677 (May 13, 2010, and as modified May 20, 2010). That case and the plaintiff's counsel in that case are not part of this Settlement or Consolidated Complaint.

1    Throughout the four full-day mediations, settlement discussions have proceeded jointly.

2    The parties have reached a global settlement resolving all actions. The first mediation was

3    conducted on December 16, 2009, before Justice Howard B. Wiener (Ret.), and shortly after Mr.

4    Smith's case was sent to arbitration.  Subsequent mediations were conducted by Magistrate Judge

5    Barbara L. Major, Northern District Magistrate Judge James Larson (now retired), and the Hon.

6    James L. Warren (Ret.).

7    G.    **The Requirements Of The ASFA**

8        The ASFA is a consumer protection statute which was enacted "to provide more

9    comprehensive protection for the unsophisticated motor vehicle [buyer]" than is provided for

10   commercial transactions.  *Cerra v. Blackstone* (1985) 172 Cal. App. 3d 604, 608.  While the

11   California Uniform Commercial Code requires all sales of repossessed collateral to be conducted

12   in a fair and commercially reasonable manner, *see* Cal. U.C.C. §3604, the ASFA requires that in

13   consumer transactions involving motor vehicles, the creditor must *also* give the debtor detailed

14   notice of his or her rights to reinstate their loan and redeem their vehicle.  *See Bank of America v.*

15   *Lallana* (1998) 19 Cal.4th 203.  This includes the requirement that the NOI must "set forth 'all

16   the conditions precedent' to reinstatement."  *Juarez v. Arcadia Financial, Ltd*. (2007) 152

17   Cal.App.4th 889, 894.

18       In imposing these requirements, "the Legislature intended that creditors provide

19   sufficient information to defaulting buyers to enable them to determine precisely what they must

20   do in order to reinstate their contracts, including stating the amounts due, to whom they are due,

21   the addresses and/or contact information for those parties, and any other specific actions the

22   buyer must take."  *Juarez* at 900.  A creditor who fails to fulfill its notice obligations and, in

23   particular, to comply with subsections (a)(1) through (a)(9) of Civil Code §2983.2 is *absolutely*

24   *barred* from collecting any deficiency.  Civil Code §2983.2(a); §2983.8(b).  Put differently,

25   "*[t]he right to a deficiency judgment is conditional* and depends on strict compliance with the

26   statutory requirements." *Union Safe Deposit Bank v. Floyd* (1999) 76 Cal.App.4th 25, 30-31

27   (emphasis added and internal citations omitted).  A creditor who fails to comply with the notice

28   rules thus may not lawfully collect or attempt to collect any deficiency from the buyer, or any

8

other person liable under the contract, following the disposition of a repossessed vehicle.

Plaintiffs contend that the NOIs sent by AmeriCredit are deficient in that, among other things: the NOI fails to disclose (1) the amount of payment for additional monthly installments coming due,  (2) late fees, (3) law enforcement fees, (4) the need for references, (5) repossession agent storage fees, (6) auction house storage fees, (7) transportation fees, (8) key fees, (9) personal property fees, (10) reconditioning fees, and (10) insurance-related fees.  Cal. Civil Code § 2983.2(a)(2).

AmeriCredit vigorously disputes these allegations.  It contends that AmeriCredit's NOI's fully comply with the law and that plaintiffs' claims are meritless.

## III.   TERMS OF SETTLEMENT

On January 13, 2012 and April 12, 2012 the parties participated in all day mediations before the Hon. James L. Warren (Ret.), a well-respected former judge and professional mediator to explore a resolution of this matter.  (Declaration of Counsel John W. Hanson, ¶ 4.)  This was the fifth, lengthy mediation over the several years of the AmeriCredit NOI Cases.  (Id. at 4.)  The parties were vigorously represented at the mediation by experienced counsel who forged an agreement in principle on the terms of a class settlement with the assistance of the mediator only at the end of the day.

The Settlement Agreement, (Hanson Decl. Exh. 1), permanently halts AmeriCredit's efforts to collect over $384 million in allegedly owed deficiency balances, and will restore to the Class over $4.3 million of the sums paid in satisfaction of AmeriCredit's improper demands.

This $388 million Settlement has several elements: 1) 100% relinquishment of all claims by AmeriCredit to the over $384 million in allegedly outstanding deficiencies; 2) full credit repair for 100% of the Plaintiff Settlement Class Members (over 35,000 California consumers); 3) restitution of 89% of the deficiency collections from the Plaintiff Settlement Class members with non-arbitration RISCs;  4) restitution of 57% of the deficiency collections from the Plaintiff Settlement Class members with arbitration clauses banning participation in class actions; 5) free legal representation and class administration for the Plaintiffs and Plaintiff Class members; and

6) the automatic provision of full benefits to Plaintiff Class member, with no claims process or other need for affirmative action (credit cleaned immediately and checks to be cut and sent by mail directly to the class).

In addition to and separate from the class relief, the Settlement a provides AmeriCredit will not oppose a separate award of attorneys' fees and costs for the over three (3) years of intense litigation in these cases, and  in an amount to be approved by the Court not to exceed $3.275 million.  The attorneys' fees were addressed only after all of the class relief was agreed to before Judge Warren.  (Hanson Decl. ¶¶ 4,12.) (Plaintiff counsel will submit their attorney's fees and costs as part of the final approval papers.)

The following is a summary of the salient terms of the settlement.

**A.      Certification Of Settlement Class**

The Settlement provides for conditional certification of a Plaintiff Settlement Class defined as follows:

> "Plaintiff Settlement Class" means all persons who were sent an NOI by AmeriCredit to an address in California at any time from March 25, 2005 through May 31, 2009, following the repossession or voluntary surrender of a motor vehicle, who were assessed a deficiency balance following the disposition of the vehicle, and against whom AmeriCredit has asserted, collected, or attempted to collect any portion of the deficiency balance.  The Plaintiff Settlement Class excludes persons whose obligations have been discharged in bankruptcy, persons against whom AmeriCredit has obtained final judgments, and persons who received NOIs that denied them the right to reinstate.

2.01.    Settlement Agreement ("S.A.") ¶ 2.15.  "Deficiency Balance" means the outstanding balance of a Conditional Sale Contract account after sale of the collateral following repossession, including interest and principal and any other charges or fees assessed before or after repossession. (S.A. ¶ 2.08.)  There are 35,424 Plaintiff Settlement Class Members.  (Hanson Decl. ¶ 5.)

**B.      Benefits To Class Members**

The Settlement confers valuable economic and equitable benefits on all members of the Settlement Class.  The monetary value of the Settlement exceeds $388 million, not including the

1  substantial value of credit repair and the removal of repossessions from Plaintiff Settlment Class

2  Members' credit reports.  The benefits include the following:

3            1.     An End to All Collection Activity And Debt Claims

4        All 35,424 Plaintiff Settlement Class Members are currently subject to and trapped under

5  the weight of debt claims by AmeriCredit.  As of May of 2012, AmeriCredit claimed Class

6  Members still owe $384,366,285 in deficiency balances.  (Hanson Decl. ¶5, Exh. 1.)   The

7  Settlement requires AmeriCredit to delete all trade lines and "zero-out" all of these balances,

8  including recalling the accounts from internal collection departments and outside collection

9  agencies.  (S.A. ¶ 3.12(a)-(c).)  The Settlement is structured so that Class Members will not be

10  saddled with tax liability as the result of AmeriCredit's agreement to zero out their accounts, and

11  no 1099 forms will be issued.

12  (S.A. ¶ 3.12(a).)

13            2.     Credit Repair

14        AmeriCredit will submit requests to each of the three major credit reporting agencies,

15  Trans Union, Equifax and Experian, to delete the entire AmeriCredit tradeline on the credit

16  reports of all Plaintiff Settlement Class Members.  (S.A. ¶ 3.12.)  AmeriCredit will continue to

17  electronically update each credit bureau as necessary to ensure that these reversals are made.

18  (S.A. ¶ 3.12(b).)  The reporting of the repossession and the allegedly owing debt will be removed

19  from over 35,000 consumers' records, allowing them an opportunity to move ahead with their

20  lives.

21            3.     Restitution

22        AmeriCredit has confirmed that Plaintiff Settlement Class Members have paid all or a

23  portion of the deficiency balances it demanded, totaling $5,416,031.  (Hanson Decl. ¶ 5, Exh. 1.)

24  The Settlement provides for restitution of $4,330,495, plus 100% of amounts Plaintiff Settlement

25  Class members submitted after February 14, 2012 (and the Courts grant of partial summary

26  judgment) when AmeriCredit first started returning newly made payments.  (S.A. ¶¶ 3.04, 3.13.)

27        The Settlement Fund will be transferred to a third party Settlement Administrator,

28  Kurtzman Carson Consultants, which will deposit the Settlement Fund into an account and

1  distribute it to the Plaintiff Settlement Class members eligible for refunds and according to the

2  agreed percentages. (S.A. ¶¶ 3.04, 3.07, 3.11; Hanson Decl. Exh 1.).  An eligible Plaintiff

3  Settlement Class Member is one who does not timely opt out of the Settlement, who made one or

4  more payments toward his or her account deficiency balance, and whose class notice was not

5  returned by the Postal Service as undeliverable without forwarding address information.  (S.A. ¶

6  3.11.)

7          Refunds will not be estimated, but will be based on the actual payment records for each

8  Plaintiff Settlement Class Member maintained by AmeriCredit.  The refunds will be automatic;

9  *eligible Plaintiff Settlement Class members will not have to submit a claim form or take any*

10 *other affirmative action* in order to receive their refunds.

11         **C.**     **Settlement Administration**

12         The costs of administering the Settlement will be paid by AmeriCredit separate from and

13 in addition to the amounts to be contributed to the Settlement Fund.  Thus, the costs of class

14 notice, distribution and administration will *not* reduce the amount of compensation payable to

15 the Plaintiff Settlement Class.  (S.A. ¶ 3.06.)

16         **D.**     **Service Awards To Class Representatives**

17         The Settlement Agreement provides for an award of $5,000  to Mr. Smith, Mr. Machado

18 and the Cardenases, and $10,000 to Mr. Aho and Ms. Bankston, each of the Class

19 Representatives in recognition of their successful efforts on behalf of the Plaintiff Settlement

20 Class.  (S.A. ¶3.05.)   The service awards will be paid by AmeriCredit in addition to the

21 Settlement Fund and will not reduce the class recovery. (Id.)

22         **E.**     **Attorneys' Fees  & Costs**

23         Plaintiffs are entitled to an award of attorneys' fees and costs as prevailing parties under

24 the Rees-Levering Act, Civil Code § 2983.4, and as "private attorneys general" pursuant to Code

25 Civil Proc. §1021.5. As part of the Settlement, AmeriCredit agreed not to oppose Plaintiff

26 Settlement Class Counsels' total request for attorneys' fees and costs in the amount of $3.275

27 million, and to pay that amount, or such other lesser amount as may be awarded by the Court, in

28

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL

1    addition to the Settlement Fund.  (S.A. ¶ 3.14.) The fees award will not diminish the Plaintiff

2    Settlement Class recovery.

3        **F.    Residual Funds**

4        Any funds remaining in the Settlement Fund after distribution will *not* revert to

5    AmeriCredit, but will be applied to a *cy pres* remedy.  *Cy pres* funds will be donated in equal

6    shares to the following charitable organizations designated by the parties, and subject to the

7    approval of the Court: C.A.R.S. (Center for Automobile Reliability and Safety); the San Diego

8    Legal Aid Society; the Alexander Community Law Center; East Bay Community Law Center;

9    Watsonville Law Clinic; the Inner City Law Center-LA; BASF VLSP; Inland Counties Legal

10   Services, Inc.; San Diego Volunteer Lawyers Project; and the Central California Legal Services,

11   Inc.  (S.A. ¶ 3.16.)

12       **G.    Releases**

13       Upon Final Approval, all Plaintiff Settlement Class Members who have not elected to be

14   excluded will release and discharge AmeriCredit and related entities from any and all claims,

15   known or unknown, relating to the assessment and collection of deficiency balances.

16   Specifically, section 4.01 of the Agreement provides that the release covers the following:

17       [A]ny and all claims, liens, demands, causes of action, obligations, damages and
         liabilities, known or unknown, that they have, had in the past, now have, or may have in
18       the future against AmeriCredit and Related Parties, that were or could have been raised
         based upon the facts alleged in the AmeriCredit NOI Cases or the Action against
19       AmeriCredit or any of the Related Parties or that arise directly or indirectly out of any
         such claims; this release includes, but is not limited to, any claims arising out of
20       AmeriCredit's sending of an NOI, the content of the NOI, the assertion of a deficiency
         following repossession, the collection or attempted collection of the deficiency, and the
21       reporting to credit bureaus of the amounts remaining on the account after repossession.
         Representative Plaintiffs and Plaintiff Settlement Class members expressly understand
22       and acknowledge that it is possible that unknown losses or claims exist or that present
         losses may have been underestimated in amount or severity.  They explicitly took that
23       possibility into account in entering into this Agreement, and a portion of the
         consideration and the mutual covenants contained herein, having been bargained for
24       between the Parties to this Agreement with the knowledge of the possibility of such
         unknown losses or claims, was given in exchange for a full accord, satisfaction, and
25       discharge of all such losses or claims.  Consequently, Representative Plaintiffs and
         Plaintiff Settlement Class members expressly waive all rights under California Civil
26       Code §1542, which provides:

27

28

---
13

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Although plaintiffs are not aware of any cases pending in other jurisdictions in which similar claims are asserted, the Settlement will effectively resolve and release any such claims.

**H.    Class Notice**

The Settlement Class Notice agreed to by the parties is attached to the Hanson Declaration as Exhibit 2.   The Notice duly informs Plaintiff Settlement Class Members of the terms of the Settlement, including the relief that Plaintiff Settlement Class Members will receive, and their rights to opt out of or object to the Settlement.

AmeriCredit has searched its database and has identified 29,191 class member accounts and 35,424 borrower / co-borrower Plaintiff Settlement Class Members.  Within 10 business days after Preliminary Approval, AmeriCredit will provide to the Settlement Administrator, in electronic format, a spreadsheet containing the identity, last known address, account number, and social security number of each Plaintiff Settlement Class Member, and the total amount of payments, if any, s/he made against the deficiency balance claimed owed.  (S.A. ¶3.07.)  The Settlement Administrator will then conduct an address check and then send the Notice to all Plaintiff Settlement Class Members by first class mail.  (*Id*. ¶ 3.07.)  The Notices will be re-mailed if any additional information is provided by the Postal Service.

1.    Right to Opt Out or Object

The Notice will inform Class Members that they may elect to be excluded from the Settlement Class by submitting a written request for exclusion to the Settlement Administrator, to be postmarked no later than August 24, 2012, assuming a Final Approval Hearing date of September 21, 2012.  (S.A. ¶ 3.09.)[3]  With an expected mailing date of Class Notice on or before June 20, 2012, this will provide ample time for any action a Plaintiff Settlement Class member

---

[3] If the hearing is set at a later date, then the opt-out/objection deadline will be set to occur fourteen (14) calendar days after the filing of the Final Approval papers. (S.A. ¶ 3.09).

1   should need to take.  Any individual who timely opts out will not have any rights under the

2   Settlement, and will not be bound by its terms.  Class Members will also be informed of their

3   right to object to the Settlement in a similar manner.  (Id.)

4        Opt-outs and objections will be sent to the Settlement Administrator and forwarded to

5   counsel for the parties.

6   **IV.   ARGUMENT**

7        **A.     The Standard For Review Of A Class Action Settlement**

8        "Preliminary approval of a proposed settlement is the first step in a two-step process

9   required before a class action may be settled."  *In re NASDAQ Market-Makers Antitrust Litig.*,

10  1997-2 Trade Cas. (CCH) ¶71, 981, at 80, 817 (S.D.N.Y. Oct. 16, 1997).   First, the Court

11  reviews the settlement preliminarily to determine whether it is sufficient to warrant public notice

12  and a hearing.  Manual for Complex Litigation, Fourth §23.14 (West Ed. 2004) ("MCL").  This

13  initial assessment is generally made on the basis of information already known to the Court and,

14  if necessary, may be supplemented by briefs, motions, or an informal presentation from the

15  settling parties, if requested.  *In re NASDAQ Market-Makers Antitrust Litig.*, *supra*.  In this case,

16  the Court has the advantage of years of involvement with this litigation and an intimate

17  knowledge of the proceedings.  Preliminary approval permits notice to be given to the class

18  members of a hearing on final settlement approval, at which hearing class members and the

19  settling parties may be heard regarding whether the Court should enter an order finally approving

20  the settlement.

21       Settlements of class actions are favored by the courts.  *Officers for Justice v. Civil Serv.*

22  *Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983) ("voluntary

23  conciliation and settlement are the preferred means of dispute resolution.").[4]  Thus, in

24

25       [4] The law favors settlement, particularly in class actions and other complex cases where
26  substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.
    *See*, H. Newberg & A. Conte, Newberg on Class Actions, §§ 11.41 (4th ed. 2002) (hereinafter
27  "Newberg"); *Class Plaintiffs v. City of Seattle* (9th Cir. 1992) 955 F.2d 1268, 1276, *cert. denied*,
    506 U.S. 953; *Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976) 529 F.2d 943, 950;  *Potter v.*
28  *Pacific Coast Lumber Co.* (1951) 37 Cal.2d 592, 602.

determining whether preliminary approval is warranted, the issue is whether the proposed settlement is within the range of what might in a broad sense be found to be fair, reasonable, and adequate such that notice of the proposed settlement should be given to class members and a hearing scheduled to consider final settlement approval.[5] The MCL defines the Court's duty in this regard as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

MCL 4th at § 30.41.

Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations overseen in part by a well-respected mediator, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is appropriate. *NASDAQ*, *supra*, at 80,817.

There is an initial presumption that a proposed settlement is fair and reasonable when it is the result of arms'-length negotiations. *See* <u>Newberg on Class Actions</u> §11.41 at 11-88 (3d ed. 1992).  The proposed settlement here is the result of negotiations that were non-collusive and entered into after extensive negotiations over four full mediations, disclosure of all relevant factual information by AmeriCredit.  (Hanson  Decl., ¶¶5, 12.)  Counsel on both sides are experienced in class action litigation and were both thoroughly familiar with the factual and legal issues raised by this litigation, engaged in substantial negotiations over the Agreement before agreeing to the final settlement terms, and considered numerous relevant factors in agreeing to

---

[5] *See*, *e.g.*, *North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs*. (1994) 27 Cal.App.4th 1085, 1089-90; 4 Newberg at § 11.25

1  this settlement.  (Id. at ¶¶5-12.)  Courts recognize that the opinions of experienced and informed

2  counsel supporting a settlement are entitled to considerable weight in granting such approval.  *In*

3  *re Salomon Inc. Sec. Litig.,* 1994 U.S. Dist. LEXIS 8038, at *42 (S.D.N.Y. June 15, 1994).

4        The second step in a class action settlement is the final approval stage, at which time the

5  trial court is charged with making a final determination as to whether, in light of the total

6  circumstances of the action and the response of the class members to the notice, the settlement is

7  fair, reasonable and adequate.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir.

8  1998) ("The question we address is not whether the final product could be prettier, smarter or

9  snazzier, but whether it is fair, adequate and free from collusion.") The court has broad discretion

10  in making this determination, and may consider a number of relevant factors, including the

11  strength of the plaintiffs' case, the likelihood and amount of potential recovery, the risk of future

12  litigation and appeals, expense and likely duration of further litigation, the amount offered in

13  settlement, the extent of discovery and stage of the proceedings, the experience and opinion of

14  counsel, and the reaction of class members to the settlement.  *Officers for Justice v. Civil Service*

15  *Comm.,* 688 F.2d 615, 628 (9th Cir. 1982); *Hanlon*, *supra*, 150 F.3d at 1026.   Although the final

16  approval stage has not yet been reached, and the class has not had a full opportunity to comment,

17  Plaintiffs' counsel has fielded hundreds of calls and emails from the Plaintiff Settlement Class

18  and the response to the Settlement has been uniformly and extremely positive.

19

20        **B.**    **The Court Should Grant Preliminary Approval Of The Proposed Class Settlement In This Case**

21        The proposed settlement of this action clearly warrants preliminary approval under the

22  liberal standards summarized above.  The settlement is not only a fair, reasonable and adequate

23  resolution of the claims asserted, it is an extremely favorable result for the Settlement Class.

24        1.    The Case Meets all Requirements for Class Certification

25        The suitability for class treatment is the first question at the Preliminary Approval stage.

26  The Court has already certified a Class and SubClass in the *Aho v. AmeriCredit* case, and all of

27  the reasons stated in the Court's opinion there apply equally here.  *Aho v. Americredit Fin.*

28  *Servs*., 277 F.R.D. 609, 2011 U.S. Dist. LEXIS 154705 (S.D. Cal., 2011); (*Aho v. AmeriCredit*,

1    10-cv-1373 DMS-BLM, [Doc. No. 72]).  The only material difference between the class already

2    certified in *Aho*, and that requested here, is the inclusion of those AmeriCredit customers whose

3    purchase contracts have arbitration clauses.  In *Aho*, those persons were specifically excluded.

4    (Id.)  In addition, the previous Rule 23(b)(2) SubClass certified in *Aho* will now be included in

5    the Plaintiff Settlement Class to be provisionally certified under Rule 23(b)(3), and will receive

6    notice and the opportunity to opt out or object.

7            As the Court knows, the ASFA expressly contemplates that actions may be brought

8    asserting "multiple claims," Civil Code §2984.4(a), and challenges to transactions involving

9    standardized NOIs are typically certified as class actions because they present common questions

10   of both law and fact.  *See, e.g., Fireside Bank v. Superior Court* (2007) 40 Cal.4th 1069; *Bank of

11   America v. Lallana* (1998) 19 Cal.4th 203; *Juarez v. Arcadia Financial, Ltd*. (2007) 152

12   Cal.App.4th 889; *Lewis v. Robinson Ford Sales, Inc.* (2007) 156 Cal.App.4th 359.  This case is

13   no different.  AmeriCredit's records provide a reliable source of information about the identity of

14   the injured Plaintiff Settlement Class; it is undisputed that AmeriCredit's NOI was a standard

15   form document that was sent to all consumers who were alleged to be in default during the

16   relevant period; and the predominant issue, common to all Plaintiff Settlement Class Members'

17   claims, is whether the information provided in those NOIs did or did not satisfy the strict

18   requirements of the ASFA.

19                  2.    The Settlement Provides Excellent Relief for the Class

20           All of the key criteria identified by the courts as indicating that a proposed class action

21   settlement is fair, reasonable and adequate are present in this case.  (See Hanson Decl.)

22                  a.    **The benefits achieved are excellent and fair**

23           The Settlement not only provides substantial compensation to Plaintiff Settlement Class

24   Members who paid unlawful deficiency balances, but protects all Plaintiff Settlement Class

25   Members from any further collection activity and alleviates the damage to their credit reports.

26   The Settlement will prevent numerous additional lawsuits and protect thousands of financially-

27   stressed consumers who have little knowledge of their legal rights and virtually no means to

28   obtain counsel to represent them.

1    Plaintiff Settlement Class Members without arbitration clauses banning participation in

2    class actions will receive 89% refund of all amounts they paid post-repossession.  Those with

3    arbitration clauses banning class actions will receive a still substantial, but lesser, refund of 57%

4    of amount paid.  Both groups will receive 100% extinguishment of future deficiency claims and

5    full credit repair, and will both receive all benefits automatically.  The reduced restitutionary

6    award reflects the U.S. Supreme Court's ruling in *AT&T Mobility v.  Concepcion*, __ U.S.___,

7    131 S. Ct. 1740, 179 L. Ed. 2d 742, 2011 U.S. LEXIS 3367 (U.S., April 27, 2011)(overruling

8    *Discover Bank* and upholding the class action ban included in AT&T Mobility's arbitration

9    clause).  It also reflects the uncertainty surrounding the enforceability of the standard California

10   RISC arbitration clauses generally, which issue is currently before the California Supreme Court.

11   *See Sanchez v.  Valencia Holding Co., LLC* 132 Cal.Rptr.3d 517, 2011 WL 5027488 (Cal.App.2

12   Dist., Nov. 23 2011)(review granted by *Sanchez v. Valencia Holding Company LLC*, 139

13   Cal.Rptr.3d 2 (Cal.S.Ct., March 21, 2012)).   Both the arbitration clause and non-arbitration

14   clause holders were vigorously represented by their Class Counsel and Class Representatives,

15   and have achieved excellent results through this litigation.

16           **b.**     **The Settlement is based on a complete understanding of the issues**

17       The Settlement was negotiated by counsel with extensive class action experience and

18   particular expertise in NOI litigation. (Hanson Decl. ¶¶ 9,10.)  The Settlement is structured so as

19   to impose all notice and administrative costs on AmeriCredit and includes the payment of

20   attorneys' fees and service awards on top of the payments to Plaintiff Settlement Class Members,

21   so as to maximize the amount of compensation to the Class.  Prior to the mediation Plaintiff

22   Settlement Class Counsel was fully prepared with information about the facts of the case and the

23   Plaintiff Settlement Class to enable them to make an informed and reasonable decision to

24   recommend the Settlement to the Court.  (Hanson Decl.)  This information indeed included full

25   preparation for trial and extensive discovery, as well as extensive appellate and motion practice.

26   (Id.)

27           **c.**     **The Settlement was achieved through arms-length negotiation between skilled and experienced counsel**

28

1    Plaintiffs were represented by experienced litigators well-versed in the class action and

2    settlement process, and with extensive expertise in consumer financial services litigation.

3    AmeriCredit was likewise represented by well-known and qualified defense counsel, and both

4    sides advocated vigorously for their clients.  Moreover, the Settlement terms were achieved with

5    the assistance of an impartial mediator, Judge James L. Warren (Ret.).  (Hanson Decl.)

6                    **d.    The proposed fee and service awards are reasonable**

7        In discharging its duty to determine the fairness of attorneys' fees in a class action

8    settlement, the court's primary concern is to ensure that the process of negotiation leading to the

9    fee has "adequately protected the class from the possibility that class counsel were accepting an

10   excessive fee at the expense of the class."  *Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938,

11   972.   Here, the facts that the parties reserved negotiation of the amount of attorneys' fees to be

12   awarded until after agreement was reached on the parameters of the Settlement, that fees will be

13   paid on top of the Settlement Fund, and that the amount of the agreed fee award was based on an

14   extensive investment of time and effort over several years of aggressive litigation, provide

15   compelling evidence that no collusion or impropriety was involved.  (See Hanson Decl.)

16       The reasonableness of the requested award is also demonstrated by the fact that the fee is

17   quite modest in comparison to the $388 million plus value of the settlement:  it represents less

18   than 1% of the concrete and readily quantifiable monetary benefits recovered for the Class,

19   without even accounting for the value of clearing Potential Settlement Class Members' credit

20   histories.  At the time of the final approval hearing, Plaintiff Settlement Class Counsel will ask

21   the Court to award fees based upon the value of the benefits achieved for the Plaintiff Settlement

22   Class in the Settlement and will present their time and expense records to allow for a cross-check

23   under the lodestar/multiplier method.

24       The amount proposed to be awarded as service fees to each of the Plaintiff Settlement

25   Class Representatives, $5,000-$10,000, is likewise well within the customary range of awards in

26   cases of this magnitude.  It has long been established that courts have discretion to approve such

27   service or "incentive" awards to representative plaintiffs in class actions as compensation for

28   their having expended time and effort for the benefit of others and for having undertaken the

risks inherent in serving as a named plaintiff.  *See, e.g.*, *Staton, supra,* 327 F.3d at 977; *In re: Mego Fin. Corp. Sec. Litig.* (9th Cir. 2000) 213 F.3d 454, 463; *Van Vranken v. Atlantic Richfield Co.* (N.D.Cal. 1994) 901 F.Supp. 294, 299.  At final approval, the Class Representatives will supply declarations establishing that each of the Class Representatives contributed value to the successful resolution of the case, and that the requested service awards are within the range of what is reasonable.

**VI.      CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion should be granted and the Court should enter the Proposed Order filed herewith.

Dated:  June 1, 2012                    THE HANSON LAW FIRM

LAW OFFICES OF MICHAEL E. LINDSEY

ANDERSON, OGILVIE & BREWER LLP


By:    /s/ John W. Hanson
            John W. Hanson

Attorneys for Plaintiffs

<u>PROOF OF SERVICE</u>

STATE OF CALIFORNIA       )

                                 ) ss.

COUNTY OF SAN DIEGO )

       I am employed in the County of San Diego, State of California.  I am over the age of 18 and not a party to the within action.  My business address is: 16870 W. Bernardo Dr., Ste. 400, San Diego, California 92127.

       On the date shown below,  I served the foregoing document described as:

UNOPPOSED APPLICATION FOR ENTRY OF  ORDER PRELIMINARILY  APPROVING SETTLEMENT AND CLASS NOTICE PROGRAM

DECLARATION OF JOHN W. HANSON IN SUPPORT OF UNOPPOSED APPLICATION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

DECLARATION OF MICHAEL E.  LINDSEY IN SUPPORT OF APPLICATION FOR PRELIMINARY APPROVAL

*In re AmeriCredit Financial Servs. Litigation*

to the interested parties in this action by mail at San Diego, California addressed as follows:

Peter S. Hecker

Sheppard Mullin Richter & Hampton LLP

Four Embarcadero Center, 17th Floor

San Francisco, CA, 94111-4109

[X]     (BY EFILE) The above document was served on the interested party named above by electronic means via Efile.

[X]     (FEDERAL) I declare that I am a member of the bar of this court.

       Executed on June 1, 2012, at San Diego, California.

                                 /s/John W. Hanson

                                  John W. Hanson

PLAINTIFFS' MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL